UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, AND ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, | No. |
| Plaintiffs, | |
| vs. | |
| CYPRESS RX INC., BRIAR DRUG STORE INC d/b/a BRIARWOOD RX, BETTER SOON RX INC., STORY AVE PHARMACY INC d/b/a 99 CENTS & UP, GALAXY RX INC, ESMERALDA PHARMACY INC, 167 RX INC, FAMILY CARE PHARMACY OF LI INC d/b/a FAMILY CARE PHARMACY, S&N NYC INC d/b/a COLDEN PHARMACY, ASG RX CORP, RUBEN SHALOMOV, MIKHAIL BORUKHOV A/K/A MICHAEL BORUKHOV, DENI YAKUBOV, ANNA ABRAMOVA, AVI ABRAHAM KIMYAGAROV, JOHN DENEGALL, VLADIMIR VERBITSKY, ARON ZAVULUNOV, EFRAY SHAMALOV, IRINA POLVANOVA, NATAN LEVIYEV, SHAMIR DZHURAYEV, ALBERT MALAKOV, LAZAR NATANOV, ARTHUR GUKASYAN, KD WHOLESALE INC., MBJ WHOLESALE INC., YBJ WHOLESALE INC., SHLOMO MASHIYEV, AND BRIAN MIRZAKANDOV, AND | |

1

BENJAMIN YAKUBOV,

   Defendants.

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Fire & Casualty Insurance Company (collectively, "Allstate" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

## I.    **INTRODUCTION**

1.    This case involves a scheme to operate Cypress Rx Inc. ("Cypress"), Briar Drug Store Inc d/b/a Briarwood Rx ("Briar"), Better Soon Rx Inc. ("Better Soon"), Story Ave Pharmacy Inc d/b/a 99 Cents & Up ("Story Ave"), Galaxy Rx Inc ("Galaxy"), Esmeralda Pharmacy Inc ("Esmeralda"), 167 Rx Inc ("167 Rx"), Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy ("Family Care"), S&N NYC Inc d/b/a Colden Pharmacy ("S&N"), and ASG RX Corp ("ASG") (collectively, "Pharmacy Defendants") in violation of New York law.

2.    The Pharmacy Defendants were registered to Defendants Ruben Shalomov ("Shalomov"), Mikhail Borukhov a/k/a Michael Borukhov ("Borukhov"), Deni Yakubov ("D. Yakubov"), Anna Abramova ("Abramova"), Avi Abraham Kimyagarov ("Kimyagarov"), John Denegall ("Denegall"), Vladimir Verbitsky ("Verbitsky"), Aron Zavulunov ("Zavulunov"), Efray Shamalov ("Shamalov"), Irina Polvanova ("Polvanova"), Natan Leviyev ("Leviyev"), Shamir Dzhurayev ("Dzhurayev"), Albert Malakov ("Malakov"), Lazar Natanov ("Natanov"), and Arthur Gukasyan ("Gukasyan") (collectively, "Pharmacy Owner Defendants").

3.    The Pharmacy Defendants looked like independent neighborhood pharmacies, but were actually part of a larger scheme driven by fraudulent insurance claims and money laundering.

2

4.      The Defendants damaged Allstate by collecting payments on fraudulent No-Fault claims submitted by the Pharmacy Defendants, which were supported by bills for unnecessary topical pain-relief drugs, including diclofenac sodium 3% gel, lidocaine 5% ointment, and lidocaine patches ("Topical Pain Products").

5.      The Defendants' scheme exploited New York's No-Fault laws, which provide insurance coverage to persons ("claimants") involved in automobile accidents. New York was an ideal venue for this scheme because claimants are eligible for at least $50,000.00 in coverage for necessary medical and pharmacy expenses. Claimants can assign their No-Fault benefits to pharmacies, which allows them to seek payment directly from the claimants' insurers.

6.      The Pharmacy Defendants were never eligible to collect No-Fault payments from Allstate because their claims were fraudulent; the prescriptions themselves were unnecessary and the Pharmacy Defendants were operated in violation of New York law.

7.      Pharmacies are prohibited from billing for unnecessary drugs, yet the Pharmacy Defendants billed Allstate for Topical Pain Products that were medically unnecessary—the claimants did not need the Topical Pain Products, and the drugs were ineffective to treat musculoskeletal conditions.

8.      The Defendants' scheme focused on expensive drugs that could be acquired at a low cost, which enabled the Pharmacy Defendants to exploit New York's No-Fault fee schedule, whose rates are calculated based on the drug's average wholesale price, which is typically many times greater than a drug's actual acquisition cost.

9.      The Defendants secured a steady stream of prescriptions through illegal referral arrangements with clinics that specifically catered to No-Fault patients. The prescriptions were

generated because of fraudulent predetermined treatment protocols that required prescriptions for all claimants regardless of medical need.

10.    As detailed below, several Defendants are implicated in other fraud actions, including criminal actions involving counterfeit drugs, money laundering, and fraudulent claims.

11.    Like the Defendants, many of the non-party prescribers involved in the Pharmacy Defendants' claims are also implicated in other fraud schemes.

12.    For example, providers working for non-party Metro Pain Specialists, P.C. ("Metro Pain") have been accused of participating in No-Fault fraud schemes, which were driven by prescriptions that were issued pursuant to predetermined protocols and illegal referral arrangements.  Non-party Michael Alleyne, M.D. ("Alleyne"), who worked for non-party Metro Pain, was a source of prescriptions involved in claims submitted by the Pharmacy Defendants, including Briar and Galaxy.  As a condition of working for Metro Pain, Alleyne was required to prescribe specific topical pain-relief drugs.  *See* Affidavit of Michael Alleyne, M.D., annexed hereto at Exhibit 1.  Alleyne was also required to use pre-printed forms to issue prescriptions, which were later altered without his authorization.  *Id.*

13.    The Pharmacy Defendants also submitted claims supported by fabricated prescriptions.  For example, non-party Arkam Rehman, M.D. ("Rehman") stated in a sworn affidavit that ASG submitted prescriptions under his name and credentials that he "did not issue or authorize."  *See* Affidavit of Arkam Rehman, M.D., annexed hereto at Exhibit 2.

14.    In other cases, the Pharmacy Defendants' claims were supported by the same type of pre-printed forms that Rehman identified as fraudulent and unauthorized.

4

15.     Overall, this scheme generated a flood of claims for drugs that were ordered indiscriminately and without regard for actual medical need, which enabled the Defendants to enrich themselves at the expense of patients.

16.     The Defendants also laundered or transferred the proceeds of the scheme using shell companies, namely Defendants KD Wholesale Inc. ("KD Wholesale"), MBJ Wholesale Inc. ("MBJ Wholesale"), and YBJ Wholesale Inc. ("YBJ Wholesale") (collectively, "Shell Company Defendants"), which were owned by Defendants Shlomo Mashiyev ("Mashiyev"), Brian Mirzakandov ("Mirzakandov"), and Benjamin Yakubov ("B. Yakubov") (collectively, "Shell Company Owner Defendants").

17.     The Pharmacy Defendants' payments to the Shell Company Defendants were comprised, in part, of the proceeds generated by fraudulent No-Fault claims.   As detailed herein, the proceeds were likely converted to untraceable cash through the Shell Company Defendants' sham transactions with gold and jewelry companies.

18.     The Defendants knew that the pharmacies were operated in violation of New York law, which means they also knew that the Pharmacy Defendants' claims were fraudulent because the supporting records and bills either misrepresented or omitted material facts about the Pharmacy Defendants' eligibility for payment under New York's No-Fault laws.

19.     Allstate reasonably relied on the facial validity of the records and bills that were mailed or faxed by the Pharmacy Defendants—and the representations contained therein—when making payments on the Pharmacy Defendants' No-Fault claims.

20.     The success of the Defendants' scheme to defraud relied on the transmission to Allstate, through the U.S. Mail or wires, of invoices, bills, and other No-Fault claim documents

that warranted the Pharmacy Defendants' eligibility to collect payments under New York's No-Fault laws.

21.    By this Complaint, Allstate brings claims against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common-law fraud; and (c) unjust enrichment.

22.    This action seeks actual damages in excess of $1,463,999.00.  The actual damages are comprised of payments that Allstate was wrongfully induced to make in connection with the Pharmacy Defendants' fraudulent No-Fault claims.

23.    Allstate also seeks declarations pursuant to 28 U.S.C. § 2201 that it is not legally obligated to pay the Pharmacy Defendants (or their agents) in connection with any No-Fault claims.

24.    All of the acts and omissions of the Defendants described throughout this Complaint were undertaken intentionally.

25.    The Defendants' fraudulent scheme was designed to elicit payment of automobile insurance contract proceeds from Allstate to the Pharmacy Defendants.

26.    In each claim at issue in this Complaint, an Allstate automobile insurance contract was the platform upon which the Defendants sought—and in many instances obtained—payment for pharmacy services that were not compensable under New York's No-Fault laws.

27.    The Defendants knew that the claimants identified in this Complaint were eligible for insurance coverage pursuant to automobile insurance policies issued by Allstate.

28.    Allstate estimates the Defendants purposely mailed or faxed several hundreds of bills and records to Allstate on behalf of the Pharmacy Defendants in support of claims that they knew were not compensable under New York's No-Fault laws.

## II.    PARTIES

### A.    PLAINTIFFS

29.    Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Fire & Casualty Insurance Company are corporations duly organized and existing under the laws of the State of Illinois, having their principal place of business in Northbrook, Illinois.

30.    At all times relevant to the matters alleged in this Complaint, Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Fire & Casualty Insurance Company were authorized to conduct business in New York.

### B.    DEFENDANTS

### 1.    Cypress Rx Inc.

31.    Cypress is a New York corporation with a principal place of business at 11-05 Cypress Ave., Ridgewood, NY.

32.    Cypress was owned by Kimyagarov and Denegall during the relevant period.

33.    Cypress billed for pharmacy services in connection with Allstate claimants.

34.    Cypress's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

35.    Cypress funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

36.    Cypress was operated in violation of applicable New York licensing requirements during the relevant period.

37.    Cypress was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 2.     **Briar Drug Store Inc d/b/a Briarwood Rx**

38.     Briar is a New York corporation with a principal place of business at 85-15 Main St., Comm. 7, Briarwood, NY.

39.     Briar was owned by Abramova during the relevant period.

40.     Briar's pharmacy registration in New York was discontinued in or around June 2022.

41.     Briar billed for pharmacy services in connection with Allstate claimants.

42.     Briar's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

43.     Briar funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

44.     Briar was operated in violation of applicable New York licensing requirements during the relevant period.

45.     Briar was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 3.     **Better Soon Rx Inc.**

46.     Better Soon is a New York corporation with a principal place of business at 54-10 Flushing Ave., Maspeth, NY.

47.     Better Soon was owned by Yakubov during the relevant period.

48.     Better Soon billed for pharmacy services in connection with Allstate claimants.

49.     Better Soon's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

50.     Better Soon funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

51.     Better Soon was operated in violation of applicable New York licensing requirements during the relevant period.

52.     Better Soon was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 4.     Story Ave Pharmacy Inc d/b/a 99 Cents & Up

53.     Story Ave is a New York corporation with a principal place of business at 1903 Story Ave., Bronx, NY.

54.     Story Ave was owned by Malakov during the relevant period.

55.     Story Ave's pharmacy registration in New York was discontinued in or around February 2025.

56.     Story Ave billed for pharmacy services in connection with Allstate claimants.

57.     Story Ave's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

58.     Story Ave funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

59.     Story Ave was operated in violation of applicable New York licensing requirements during the relevant period.

60.    Story Ave was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**5.    Galaxy Rx Inc**

61.    Galaxy is a New York corporation with a  principal place of business at 4702 47th Ave., Woodside, NY.

62.    Galaxy was owned by Polvanova and Leviyev during the relevant period.

63.    Galaxy's pharmacy registration in New York was discontinued in or around June 2023.

64.    Galaxy is no stranger to fraud schemes—it was implicated in a scheme involving the purchase and sale of counterfeit drugs in which Galaxy dispensed counterfeit drugs to "unsuspecting patients" and engaged in sham transactions with shell companies to conceal and launder the proceeds of the scheme.  *See Gilead Sciences, Inc. v. Khaim,* No. 1:24-cv-04259 (E.D.N.Y.).

65.    Galaxy was also implicated in a criminal scheme in which Polvanova and others used Galaxy for the purpose of submitting fraudulent claims, trafficking in black market drugs, paying kickbacks, and laundering scheme proceeds.  *See United States v. Aminov*, No. 1:23-cr-00110 (S.D.N.Y.).

66.    Here, Galaxy billed for pharmacy services in connection with Allstate claimants.

67.    Galaxy's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

68.    Galaxy funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

69.    Galaxy was operated in violation of applicable New York licensing requirements during the relevant period.

70.    Galaxy was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

6.    **Esmeralda Pharmacy Inc**

71.    Esmeralda is a New York corporation with a principal place of business at 6555 Myrtle Ave., Glendale, NY.

72.    Esmeralda was owned by Verbitsky and Zavulunov during the relevant period.

73.    Esmeralda's pharmacy registration in New York was discontinued in or around April 2025.

74.    Esmeralda billed for pharmacy services in connection with Allstate claimants.

75.    Esmeralda's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

76.    Esmeralda funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

77.    Esmeralda was operated in violation of applicable New York licensing requirements during the relevant period.

78.    Esmeralda was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

7.    **167 Rx Inc**

79.    167 Rx is a New York corporation with a principal place of business at 55 East 167th St., Bronx, NY.

80.    167 Rx's pharmacy registration in New York was discontinued in or around July 2023.

81.    167 Rx has been accused of submitting fraudulent No-Fault claims for medically unnecessary and falsely prescribed Topical Pain Products, including diclofenac sodium 3% gel and lidocaine 5% ointment.  *See Gov't Empls. Ins. Co., et al., v. Fill Rx NY Inc.*, No. 1:24-cv-01844-RER-SJB (E.D.N.Y.).

82.    167 Rx was owned by Shalomov and Borukhov during the relevant period.

83.    167 Rx billed for pharmacy services in connection with Allstate claimants.

84.    167 Rx's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

85.    167 Rx funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

86.    167 Rx was operated in violation of applicable New York licensing requirements during the relevant period.

87.    167 Rx was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**8.    Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy**

88.    Family Care is a New York corporation with a principal place of business at 33 Walt Whitman Rd., Suite 100, Huntington Station, NY.

89.    Family Care was owned by Shamalov and managed by Borukhov during the relevant period.

90.    Family Care's pharmacy registration in New York was discontinued in or around April 2024.

91.    Evidence introduced in the matter *United States v. Rasulov*, No. 1:20-cr-00653 (S.D.N.Y.) revealed that Family Care was part of a criminal money laundering scheme in which Family Care issued checks to shell companies controlled by confessed money launderers.  Once paid, the checks were converted to cash and the proceeds were given to another admitted money launderer, who was also running a massive pharmacy fraud scheme.  *See United States v. Khaim*, No. 1:20-cr-00580 (E.D.N.Y.).

92.    Here, Family Care billed for pharmacy services in connection with Allstate claimants.

93.    Family Care's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

94.    Family Care funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

95.    Family Care was operated in violation of applicable New York licensing requirements during the relevant period.

96.    Family Care was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**9.    S&N NYC Inc d/b/a Colden Pharmacy**

97.    S&N is a New York corporation with a principal place of business at 938 East Gun Hill Rd., Bronx, NY.

98.    S&N was owned by Dzhurayev during the relevant period.

13

99.    S&N's pharmacy registration in New York was discontinued in or around July 2023.

100.    S&N has been accused of billing for medically unnecessary Topical Pain Products that were prescribed pursuant to unlawful kickback relationships with referring providers. *See Gov't Empls. Ins. Co., et al., v. S&N NYC, Inc.,* No. 1:22-cv-07830 (E.D.N.Y.).

101.    S&N billed for pharmacy services in connection with Allstate claimants.

102.    S&N's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

103.    S&N funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

104.    S&N was operated in violation of applicable New York licensing requirements during the relevant period.

105.    S&N was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**10.    ASG Rx Corp**

106.    ASG is a New York corporation with a principal place of business at 10216 Liberty Ave, Ozone Park, NY.

107.    ASG was owned by Natanov and Gukasyan during the relevant period.

108.    ASG billed for pharmacy services in connection with Allstate claimants.

109.    ASG's bills are fraudulent because the billed-for drugs were unnecessary and prescribed because of predetermined prescription protocols, which were designed to maximize the Defendants' profits at the expense of patient safety and well-being.

110.    ASG was operated in violation of applicable New York licensing requirements during the relevant period.

111.    ASG funneled proceeds to KD Wholesale, MBJ Wholesale, and YBJ Wholesale to conceal the scheme and permit it to continue undetected.

112.    ASG was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 11.    Ruben Shalomov

113.    Shalomov resides in and is a citizen of the State of New York.

114.    Shalomov is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

115.    Shalomov owned 167 Rx during the relevant period.

116.    Shalomov has been accused of running a fraud scheme through 167 Rx, which involved billing for unnecessary topical pain drugs. *See Gov't Empls. Ins. Co. v. Fill Rx NY Inc.*, No. 1:24-cv-01844 (E.D.N.Y.).

117.    Shalomov participated in the operation and management of 167 Rx during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy billing that 167 Rx submitted in connection with the claimants at issue in this Complaint.

118.    Shalomov also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing 167 Rx to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by 167 Rx.

### 12.    Mikhail Borukhov a/k/a Michael Borukhov

119.    Borukhov resides in and is a citizen of the State of New York.

120.    Borukhov is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

121.    Borukhov has a history of involvement in No-Fault fraud schemes.  *See Gov't Empls. Ins. Co. v. MSB RX Corp et al.*, No. 1:19-cv-00232 (E.D.N.Y.).  Borukhov allegedly operated a non-party pharmacy named Taira Rx, which billed for medically unnecessary prescription drugs and compounded pain creams that were ordered because of collusive referral relationships and predetermined treatment protocols. *Id.*

122.    Borukhov owned 167 Rx during the relevant period.

123.    Borukhov was a manager of Family Care during the relevant period.

124.    Borukhov participated in the operation and management of 167 Rx and Family Care during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by 167 Rx and Family Care in connection with the claimants at issue in this Complaint.

125.    Borukhov also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing 167 Rx and Family Care to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by 167 Rx and Family Care.

### 13.    Deni Yakubov

126.    D. Yakubov resides in and is a citizen of the State of New York.

127.    D. Yakubov is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

128.    D. Yakubov owned Better Soon during the relevant period.

129.    D. Yakubov participated in the operation and management of Better Soon during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Better Soon in connection with the claimants at issue in this Complaint.

130.    D. Yakubov also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Better Soon to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Better Soon.

### 14.    Anna Abramova

131.    Abramova resides in and is a citizen of the State of New York.

132.    Abramova is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

133.    Abramova owned Briar during the relevant period.

134.    Abramova participated in the operation and management of Briar during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Briar in connection with the claimants at issue in this Complaint.

135.    Abramova also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Briar to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Briar.

### 15.    Avi Abraham Kimyagarov

136.    Kimyagarov resides in and is a citizen of the State of New York.

137.    Kimyagarov is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

138.    Kimyagarov owned Cypress during the relevant period.

139.    Kimyagarov participated in the operation and management of Cypress during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Cypress in connection with the claimants at issue in this Complaint.

140.    Kimyagarov also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Cypress to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Cypress.

### 16.    John Denegall

141.    Denegall resides in and is a citizen of the State of New York.

142.    Denegall is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

143.    Denegall owned Cypress during the relevant period.

144.    Denegall participated in the operation and management of Cypress during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Cypress in connection with the claimants at issue in this Complaint.

145.    Denegall also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Cypress to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Cypress.

### 17.    Vladimir Verbitsky

146.    Verbitsky resides in and is a citizen of the State of New York.

147.    Verbitsky is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

148.    Verbitsky has been implicated in several other No-Fault schemes, which involved billing for unnecessary medical equipment that was prescribed through unlawful referrals. *See Gov't Empls. Ins. Co. v. Quality Custom Medical Supply Inc.*, No. 1:18-cv-02186 (E.D.N.Y.); *Gov't Empls. Ins. Co. v. Active Care Medical Supply Corp.*, No. 1:12-cv-05632 (E.D.N.Y.); *Allstate Ins. Co. v. Yadgarov*, No. 1:11-cv-06187 (E.D.N.Y.).

149.    Verbitsky owned Esmeralda during the relevant period.

150.    Verbitsky participated in the operation and management of Esmeralda during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Esmeralda in connection with the claimants at issue in this Complaint.

151.    Verbitsky also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Esmeralda to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Esmeralda.

### 18.    Aron Zavulunov

152.    Zavulunov resides in and is a citizen of the State of New York.

153.    Zavulunov is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

154.    Zavulunov owned Esmeralda during the relevant period.

155.    Zavulunov participated in the operation and management of Esmeralda during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Esmeralda in connection with the claimants at issue in this Complaint.

156.    Zavulunov also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Esmeralda to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Esmeralda.

### 19.    **Efray Shamalov**

157.    Shamalov resides in and is a citizen of the State of New York.

158.    Shamalov is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

159.    Shamalov owned Family Care during the relevant period.

160.    Shamalov participated in the operation and management of Family Care during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Family Care in connection with the claimants at issue in this Complaint.

161.    Shamalov also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Family Care to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Family Care.

### 20.    **Irina Polvanova**

162.    Polvanova resides in and is a citizen of the State of New York.

163.    Polvanova is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

164.    Polvanova owned Galaxy during the relevant period.

165.    Polvanova was indicted on October 23, 2023 based on her involvement in a massive pharmacy fraud and money laundering scheme. *See United States v. Polvanova*, No. 1:23-cr-

00110 (S.D.N.Y.).  *See* Exhibit 3.  Polvanova was charged with several crimes, including mail fraud, conspiracy to commit healthcare fraud, and conspiracy to commit money laundering.  *Id*.

166.   On October 1, 2024, Polvanova resolved her criminal charges by pleading guilty to conspiracy to commit healthcare fraud.  *See* Exhibit 4.  Polvanova admitted to being the nominee owner of Galaxy, which was used to submit fraudulent claims for prescription drugs that were obtained from illegitimate sources.  *Id*. at p. 51.  During sentencing, Polvanova acknowledged that Galaxy's bank account was used as part of a massive kickback and money laundering scheme involving the proceeds derived from Galaxy's false claims.  *See* Exhibit 5, p. 7.

167.   Polvanova is also accused of using Galaxy to purchase and sell counterfeit drugs. *See Gilead Sciences, Inc. v. Khaim,* No. 1:24-cv-04259 (E.D.N.Y.).  Polvanova allegedly purchased the counterfeit drugs through payments to shell companies created to conceal and launder the illicit proceeds of the counterfeiting scheme. *Id.* Polvanova then allegedly distributed the purchased counterfeit medication to "unsuspecting patients" of Galaxy. *Id*

168.   Polvanova participated in the operation and management of Galaxy during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Galaxy in connection with the claimants at issue in this Complaint.

169.   Polvanova participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Galaxy to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Galaxy.

### 21.   <u>Natan Leviyev</u>

170.   Leviyev resides in and is a citizen of the State of New York.

171.    Leviyev is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

172.    Leviyev owned Galaxy during the relevant period.

173.    Leviyev participated in the operation and management of Galaxy during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Galaxy in connection with the claimants at issue in this Complaint.

174.    Leviyev participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Galaxy to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Galaxy.

### 22.    Shamir Dzhurayev

175.    Dzhurayev resides in and is a citizen of the State of New York.

176.    Dzhurayev is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

177.    Dzhurayev owned S&N during the relevant period.

178.    Dzhurayev has been accused of running a No-Fault fraud scheme through S&N. *See Gov't Empls. Ins. Co. v. S&N NYC, Inc.*, No. 1:22-cv-07830 (E.D.N.Y.).  The scheme involved fraudulent claims for unnecessary pain-relief drugs that were prescribed through predetermined protocols and prohibited referrals.  *Id*.

179.    Dzhurayev participated in the operation and management of S&N during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by S&N in connection with the claimants at issue in this Complaint.

180.    Dzhurayev participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing S&N to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by S&N.

### 23.    **Albert Malakov**

181.    Malakov resides in and is a citizen of the State of New York.

182.    Malakov is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

183.    Malakov owned Story Ave during the relevant period.

184.    Malakov participated in the operation and management of Story Ave during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by Story Ave in connection with the claimants at issue in this Complaint.

185.    Indeed, Malakov was identified in a resignation notice sent to the New York State Board of Pharmacy, in which a Story Ave supervising pharmacist noted Malakov's "reckless" behavior in operating the pharmacy:

| From: | Ruben Safir <███@████ ████ |
| Sent: | Wednesday, October 27, 2021 12:58 PM |
| To: | PHARMBD; PHARMBD |
| Subject: | SP Resignation from Story Avenue Pharmacy in the Bronx 038772 |
| Attachments: | pharm-ph226Story.pdf |
| | |
| Categories: | Ric |

Good Morning

Earlier this week I was signed up as the SP for Story Avenue Pharmacy, 038772. I was guaranteed to have the needed autonomy and authority to supervise the pharmacy. Since that time, it was made clear that the business owner was going to have me take orders from someone outside the business and that they would directly interfere with my responsibilities to supervise the pharmacy. I was to have no control of the personel and the procedures that were required to supervise the pharmacy, and instead, much of the Pharmacy operation was to be dictated by Albert and Boris. On top of that though, they are reckless.

As a result of this, they gave me off indefinitely... for whatever that is supposed to mean. I also have doubts they will pay me, and I don't have essential trust in them at this point.

I am officially resigning as the SP for NYS and attaching the appropriate form

Ruben Safir RPh
04198

186.    Malakov participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing Story Ave to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by Story Ave.

### 24.    Lazar Natanov

187.    Natanov resides in and is a citizen of the State of New York.

188.    Natanov is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

189.    Natanov owned ASG during the relevant period.

190.    Natanov participated in the operation and management of ASG during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by ASG in connection with the claimants at issue in this Complaint.

24

191.    Natanov participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing ASG to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by ASG.

### 25.    **Arthur Gukasyan**

192.    Gukasyan resides in and is a citizen of the State of New York.

193.    Gukasyan is not a licensed pharmacist and is not authorized to practice pharmacy in the State of New York.

194.    Gukasyan owned ASG during the relevant period.

195.    Gukasyan participated in the operation and management of ASG during the relevant period, and is therefore responsible for the fraudulent and non-compensable pharmacy services billed by ASG submitted in connection with the claimants at issue in this Complaint

196.    Gukasyan also participated in the operation and management of KD Wholesale, MBJ Wholesale, and YBJ Wholesale by causing ASG to make illegitimate payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale for the purpose of concealing the ultimate recipients and beneficiaries of the proceeds collected by ASG.

### 26.    **KD Wholesale Inc.**

197.    KD Wholesale is a New York corporation with a principal place of business at 139-21 85th Drive, Suite 1F, Briarwood, NY.

198.    KD Wholesale is an enterprise whose activities affect interstate commerce.

199.    Mashiyev is the President of KD Wholesale.

200.    KD Wholesale helped launder scheme proceeds.  The Pharmacy Owner Defendants caused the Pharmacy Defendants to issue payments to KD Wholesale, even though no legitimate goods or services were exchanged between the parties.

201.    The Pharmacy Defendants' proceeds were deposited by Mashiyev into KD Wholesale's bank account.  From there, the monies were transferred to several different gold and jewelry companies to further conceal the proceeds.

202.    As detailed below, Mashiyev, the Pharmacy Defendants, and the Pharmacy Owner Defendants participated in the operation and management of KD Wholesale during the relevant period.

### 27.    MBJ Wholesale Inc.

203.    MBJ Wholesale is a New York corporation with a principal place of business at 3091 Brighton 5th Street, Suite 4S, Brooklyn, NY.

204.    MBJ Wholesale is an enterprise whose activities affect interstate commerce.

205.    Mirzakandov is the President of MBJ Wholesale.

206.    MBJ Wholesale helped launder scheme proceeds.  The Pharmacy Owner Defendants caused the Pharmacy Defendants to issue payments to MBJ Wholesale, even though no legitimate goods or services were exchanged between the parties.

207.    The Pharmacy Defendants' proceeds were deposited by Mirzakandov into MBJ Wholesale's bank account.  From there, the monies were transferred to several different gold and jewelry companies to further conceal the proceeds.

208.    As detailed below, Mirzakandov, the Pharmacy Defendants, and the Pharmacy Owner Defendants participated in the operation and management of MBJ Wholesale during the relevant period.

28. **YBJ Wholesale Inc.**

209.    YBJ Wholesale is a New York corporation with a principal place of business at 3091 Brighton 5th Street, Suite 4S, Brooklyn, NY.

210.    YBJ Wholesale is an enterprise whose activities affect interstate commerce.

211.    B. Yakubov is the President of YBJ Wholesale.

212.    YBJ Wholesale helped launder scheme proceeds.   The Pharmacy Owner Defendants caused the Pharmacy Defendants to issue payments to YBJ Wholesale, even though no legitimate goods or services were exchanged between the parties.

213.    The Pharmacy Defendants' proceeds were deposited by B. Yakubov into YBJ Wholesale's bank account.  From there, the monies were transferred to several different gold and jewelry companies to further conceal the proceeds.

214.    As detailed below, B. Yakubov, the Pharmacy Defendants, and the Pharmacy Owner Defendants participated in the operation and management of MBJ Wholesale during the relevant period

29. **Shlomo Mashiyev**

215.    Mashiyev resides in and is a citizen of the State of New York.

216.    Mashiyev owned KD Wholesale during the relevant period.

217.    Mashiyev participated in the operation and management of KD Wholesale during the relevant period.

218.    Mashiyev used KD Wholesale to operate, control, and profit from the Pharmacy Defendants.

219.    During the course of this scheme, Mashiyev also caused KD Wholesale to engage in transactions intended to conceal the proceeds generated by the Pharmacy Defendants' fraudulent claims.

### 30.    **Brian Mirzakandov**

220.    Mirzakandov resides in and is a citizen of the State of New York.

221.    Mirzakandov owned MBJ Wholesale during the relevant period.

222.    Mirzakandov participated in the operation and management of MBJ Wholesale during the relevant period.

223.    Mirzakandov used MBJ Wholesale to operate, control, and profit from the Pharmacy Defendants.

224.    During the course of this scheme, Mirzakandov also caused MBJ Wholesale to engage in transactions intended to conceal the proceeds generated by the Pharmacy Defendants' fraudulent claims.

### 31.    **Benjamin Yakubov**

225.    B. Yakubov resides in and is a citizen of the State of New York.

226.    B. Yakubov owned YBJ Wholesale during the relevant period.

227.    B. Yakubov participated in the operation and management of YBJ Wholesale during the relevant period.

228.    B. Yakubov used YBJ Wholesale to operate, control, and profit from the Pharmacy Defendants.

229.    During the course of this scheme, B. Yakubov also caused YBJ Wholesale to engage in transactions intended to conceal the proceeds generated by the Pharmacy Defendants' fraudulent claims.

III.    **JURISDICTION AND VENUE**

230.    Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332.

231.    Supplemental jurisdiction over the Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

232.    Venue is proper under 28 U.SC. § 1391(b)(2) whereas the vast majority of the acts known to Allstate alleged herein were carried out within the Eastern District of New York.

233.    At all relevant times, the Defendants have engaged in purposeful activities in New York by seeking and submitting payment demands for claims made under New York's No-Fault laws, as detailed, *infra*.

234.    The Defendants used frivolous legal actions, namely collection arbitrations or civil court lawsuits, which were filed against Allstate when the Pharmacy Defendants' fraudulent No-Fault claims were denied or not fully paid.  The Defendants exploited the No-Fault collection process to collect payments; this allowed the Defendants to finance their fraudulent scheme using proceeds paid by Allstate.

235.    The Defendants' activities in and contacts with New York were purposely sought and transacted to take advantage of the benefits available under New York's No-Fault laws.

236.    Because Allstate's detailed factual allegations and legal claims  arise from (a) the Defendants' unlawful acts committed in the State of New York, and (b) the Pharmacy Defendants' creation and submission of fraudulent claims from within the State of New York, there is no question that a substantial relationship exists between the transactions at issue and Allstate's causes of action.

237.    Overall, the Defendants' scheme to defraud is tied to the State of New York, which means that the ends of justice are best served through this Court's exercise of jurisdiction over the Defendants.

## IV.    NO-FAULT LAWS AND RELEVANT LICENSING STATUTES

### A.    GENERAL OVERVIEW OF NEW YORK'S NO-FAULT LAWS

238.    Allstate underwrites automobile insurance in the State of New York.

239.    New York's No-Fault laws are designed to ensure that injured victims of automobile accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services, including prescription drugs.

240.    Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq*.), and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. § 65, *et seq*.) (collectively, "the No-Fault laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter, "No-Fault benefits") to Allstate claimants.

241.    Under New York's No-Fault laws, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of an automobile.

242.    "Basic economic loss" is defined to include "all necessary expenses" for prescription drug services. N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

243.    No-Fault benefits include at least $50,000.00 per Allstate claimant for necessary expenses that are incurred for healthcare goods and services, including prescription drugs.

### B.    ELIGIBILITY REQUIREMENTS UNDER NEW YORK'S NO-FAULT LAWS

244.    Pharmacies are not eligible to collect payment under New York's No-Fault laws if they fail to meet **any** applicable New York State or local licensing requirements necessary to perform these services in New York. *See* 11 N.Y.C.R.R. § 65-3.16(a)(12).

245.    New York's Education Law applies to pharmacies.  *See* N.Y. Educ. Law § 6800, *et seq.*

246.    Under New York Education Law § 6808, no person, firm, corporation or association shall possess drugs, prescriptions or poisons for the purpose of compounding, dispensing, retailing, wholesaling or manufacturing, or shall offer drugs, prescriptions or poisons for sale at retail or wholesale unless registered by the New York State Department of Education as a pharmacy, wholesaler, manufacturer or outsourcing facility.

### 1.    Duties of Pharmacies and Their Owners

247.    Pharmacy owners and supervising pharmacists "shall be responsible for the proper conduct of [the] pharmacy." N.Y. Educ. Law § 6808(2)(e).

248.    "No pharmacist shall have personal supervision of more than one pharmacy at the same time." *Id.*

249.    Only a licensed pharmacist or pharmacy intern may perform professional pharmacy services. *See* 8 N.Y.C.R.R. § 63.6; 8 N.Y.C.R.R. § 29.7(21).

250.    Pursuant to 8 N.Y.C.R.R. § 63.6(b)(7), "[p]harmacists or pharmacy interns shall conduct a prospective drug review before each prescription is dispensed or delivered to the patient," which "review shall include screening for potential drug therapy problems due to therapeutic duplication, drug-drug interactions, including serious interactions with over-the-counter drugs, incorrect drug dosage or duration of drug treatment, drug-allergy interactions, and clinical abuse or misuse."

251.    With regard to both off-premises and on-premises deliveries of drugs, nothing in either delivery scenarios "shall prevent a pharmacist or pharmacy intern from refusing to dispense a prescription if, in his or her professional judgment, potential adverse effects, interactions or other

therapeutic complications could endanger the health of the patient." 8 N.Y.C.R.R. § 63.6(b)(8)(i)(e), § 63.6(b)(8)(ii)(d)(5).

252.    For a drug that is delivered on the pharmacy's premises, before dispensing a medication to a new patient or a new medication to an existing patient, the pharmacist or pharmacy intern must personally counsel the patient by telephone or in person on appropriate matters, including known indications, common adverse side effects or interactions, and therapeutic contraindications. 8 N.Y.C.R.R. § 63.6(b)(8)(i)(a)-(b).

253.    When dispensing a drug to a patient off of pharmacy premises, the pharmacist or pharmacy intern must "include with each prescription a written offer to counsel the patient" regarding the drug or medication, including its "known indications" and "common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered." 8 N.Y.C.R.R. § 63.6(b)(8)(i)(a)(1), (4), § 63.6(b)(8)(ii)(a).

254.    The written offer of counseling for drugs dispensed off of pharmacy premises "shall provide a telephone number at which a licensed pharmacist or pharmacy intern may be readily reached." 8 N.Y.C.R.R. § 63.6(b)(8)(ii)(a).

255.    When dispensing a drug to a patient off of pharmacy premises, if a pharmacist or pharmacy intern determines that the prescription(s) present "potential drug therapy problems which could endanger the health of the patient," such as "therapeutic duplications, drug-drug interactions and drug-allergy interactions," the pharmacist or pharmacy intern "shall personally contact the patient" either by telephone or in person to "offer counseling on the identified potential drug therapy problems" and other issues that the pharmacist or pharmacy intern deems appropriate in their judgment. 8 N.Y.C.R.R. § 63.6(b)(8)(ii)(d)(1).

256.    The responsibility of offering counseling to patients in the case of potential drug therapy problems "shall not be delegated to an individual not authorized to practice pharmacy under a license or limited permit." 8 N.Y.C.R.R. § 68.6(b)(8)(ii)(d)(2).

257.    If the patient refuses to accept such counseling, such refusal must be documented. 8 N.Y.C.R.R. § 63.6(b)(8)(ii)(d)(4).

258.    An individual who is not a licensed pharmacist is not authorized to perform functions requiring professional judgment, and thus cannot, among other things, "receive oral prescriptions from prescribers," "interpret and evaluate a prescription for conformance with legal requirements, authenticity, accuracy and interaction of the prescribed drug with other known prescribed and over-the-counter drugs," cannot "sign or initial any record of dispensing required to be maintained by law," and cannot "counsel patients." 8 N.Y.C.R.R. § 29.7(21)(ii)(b)(1), (2), (6), (7).

259.    Aiding and abetting an unlicensed person to practice a profession, including pharmacy, is considered a crime.  N.Y. Educ. Law § 6512.

### 2.    Unlawful Prescription Referral Arrangements

260.    New York law prohibits registered pharmacies from exploiting patients for financial gain. 8 N.Y.C.R.R. § 29.1(b)(2) (prohibiting registered pharmacies from "exercising undue influence on the patient or client, including the promotion of the sale of services, goods, appliances or drugs in such manner as to exploit the patient or client for the financial gain of the practitioner or of a third party").

261.    New York law prohibits registered pharmacies from engaging in unlawful referral relationships. *Id.* at § 29.1(b)(3) (prohibiting registered pharmacies from "directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or

from a third party for the referral of a patient or client or in connection with the performance of professional services.").

262.    New York Education Law § 6509-a prohibits a professional licensee, including a licensed pharmacist, from "directly or indirectly" requesting, receiving, or participating in the division, transference, assignment, rebate, splitting or refunding of a fee in connection with professional care or services related to prescription drugs.

263.    Likewise, under New York Public Health Law § 238-a, a practitioner authorized to order pharmacy services may not make a referral for such services to a healthcare provider authorized to provide such services, including to pharmacies, where such practitioner has a financial relationship with such healthcare provider. A financial relationship includes a compensation agreement and includes an arrangement with a healthcare provider that is in excess of fair market value or that provides compensation that varies directly or indirectly based on the volume or value of any referrals or business between the parties. N.Y. Pub. Health Law § 238-a(1), (5); *see also* N.Y. Educ. Law § 6530(18) (defining professional misconduct of physicians and physician assistants to include "[d]irectly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services").

### 3.    <u>Electronic Prescription Mandate</u>

264.    As of March 27, 2016, New York law requires electronic prescriptions for both controlled and non-controlled substances.  N.Y. Educ. Law § 6810(10); N.Y. Pub. Health Law § 281(3).

265.    New York's electronic prescription mandate was intended to reduce prescription drug fraud and misuse because "E-prescribing is a secure method of transmitting prescriptions

from practitioners to pharmacists. Since an e-prescription cannot be physically altered, forged, or stolen,… it curtails prescription fraud." N.Y. Senate Bill S7637 (2011-2012 Leg. Session).

266.     There are few exceptions to the electronic prescription mandate, such as when electronic prescribing is not available due to temporary technological or electrical failure, where the prescribing provider has obtained a waiver, or where drugs cannot be prescribed electronically in a timely manner (and such delay would adversely impact the patient's medical condition).  N.Y. Educ. Law § 6810(10); N.Y. Pub. Health Law § 281(3).

267.     If a prescription is not issued electronically, then the prescribing provider must indicate in the patient's health record the reason that the prescription was not issued electronically. N.Y. Educ. Law § 6810(11)-(12).

268.     If the prescriber has obtained a waiver from the New York Department of Health because of "exceptional circumstances," then the prescriptions must be issued using an Official New York State Prescription Form or an oral prescription in accordance with New York law.  *Id.*

269.     Absent one of these limited exceptions, prescribing providers must prescribe all drugs electronically.

## C.    CLAIMING REIMBURSEMENT UNDER NEW YORK'S NO-FAULT LAWS

270.     Claimants can assign their No-Fault benefits directly to pharmacies; in turn, a claimant's pharmacy may submit claims directly to an insurance company and receive payment for necessary pharmacy services rendered. 11 N.Y.C.R.R. § 65.3-11(a).

271.     Pharmacies can submit claims using the claim form required by the New York State Department of Financial Services f/k/a New York State Department of Insurance ("DOI") (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3 form"). 11 N.Y.C.R.R. § 65.3-11(b).

272.    Alternatively, pharmacies may submit claims to insurance carriers using the Health Insurance Claim Form (known as the "CMS-1500" form and formerly known as the "HCFA-1500" form).

273.    NF-3 and CMS-1500 forms are important because they certify that the pharmacy's request for payment is not materially false, misleading, or fraudulent subject to the following warning:

> "Any person who knowingly and with intent to defraud any insurance company or other persons files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime[.]"

N.Y. Ins. Law § 403(d).

274.    Pharmacies make material misrepresentations when they submit NF-3 or CMS-1500 forms that omit or misrepresent material information about the billed-for services or the pharmacies' eligibility to collect No-Fault payments.

275.    It is a material misrepresentation to submit NF-3 or CMS-1500 forms for prescription drugs that (a) are never provided, (b) are not necessary, (c) are referred to the pharmacy pursuant to unlawful arrangements with prescribing providers, (d) are dispensed without required supervision or regard for patient safety and well-being, and/or (e) are billed at a greater monetary charge than is permitted under the applicable fee schedule.

### D.    REIMBURSEMENT FOR PRESCRIPTION DRUGS UNDER NEW YORK'S NO-FAULT LAWS

276.    A pharmacy's misrepresentations regarding compliance with the applicable fee schedule is material because the New York Workers' Compensation Board has established a

schedule of fees known commonly as the "Workers' Compensation Fee Schedule" ("Fee Schedule").

277.    The Fee Schedule is used by healthcare providers and insurers to determine the level of reimbursement payable on legitimate claims.

278.    The Fee Schedule applicable to pharmacies and prescription drugs is set forth under 12 N.Y.C.R.R. § 440.1, *et seq*.

279.    Charges submitted by pharmacies prior to October 1, 2019, may be no more than the Average Wholesale Price ("AWP") for the national drug code ("NDC") for the drug on the day it was dispensed minus 12% of the AWP, plus a single dispensing fee of $4.00, for brand name drugs or medicines, and minus 20 percent of the average wholesale price, plus a dispensing fee of $5.00, for generic drugs or medicines pursuant to 12 N.Y.C.R.R. § 440.5(a)(1)(i).

280.    The NDC is a unique 10-digit, 3-segment numeric identifier assigned to each drug that reflects the vendor of the drug, identifies the drug itself, and indicates the quantity in which the drug is packaged. Each NDC number has a corresponding AWP, which identifies the price.

281.    AWP means the average wholesale price of a prescription drug as provided in the most current release of the Red Book published by Thomson Reuters or Medi-Span Master Drug Database by Wolters Kluwer Health, or any successor publisher, on the day a drug is dispensed. 12 N.Y.C.R.R. § 440.2(a).

282.    For charges submitted by pharmacies for brand name and generic prescription drugs or medicines on or after October 1, 2019, the provider may charge no more than, as applicable here, the lesser of the calculated cost or the usual and customary price for the prescription drug or medication pursuant to 12 N.Y.C.R.R. § 440.5(a)(1)(ii).

283.    "Calculated cost means the average wholesale price for the national drug code of the prescription drug or medicine on the day it was dispensed plus a dispensing fee. For brand name drugs the calculated cost shall be AWP minus 12 percent of the average wholesale price plus a dispensing fee of $4.00. For generic drugs the calculated cost shall be AWP minus 20 percent plus a dispensing fee of $5.00" 12 N.Y.C.R.R. § 440.2(c).

284.    "Usual and customary price means the retail price charged to the general public for a prescription drug." 12 N.Y.C.R.R. § 440.2(s).

285.    Under New York's No-Fault Laws, healthcare providers, including pharmacies, are prohibited from submitting charges that exceed the amounts set forth in the Fee Schedule.

286.    Additionally, New York's No-Fault Laws expressly provide that "[a] provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet **any** applicable New York State or local licensing requirement necessary to perform such service in New York." *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

287.    Accordingly, if a professional healthcare service provider, including a pharmacy, fails to meet any applicable licensing requirement necessary to perform a service, then the provider is not lawfully entitled to seek or collect No-Fault benefits under New York's No-Fault laws.

288.    As alleged herein, the Defendants failed to meet several laws and regulations when providing pharmacy services to claimants during the course of this scheme; therefore, the Pharmacy Defendants were never eligible to collect No-Fault payments from Allstate.

## V.    SPECIFIC FACTS ABOUT THE DEFENDANTS' SCHEME TO DEFRAUD

289.    The Defendants' scheme was designed to obtain No-Fault payments that the Pharmacy Defendants were not entitled to receive.

38

290.    The Defendants caused the Pharmacy Defendants to bill for medically unnecessary drugs, including Topical Pain Products.

291.    The Defendants targeted specific drugs that could be acquired at low cost and then billed at inflated rates to maximize the Pharmacy Defendants' profits.

292.    The Pharmacy Defendants could not bill for the Topical Pain Products without prescriptions from licensed medical providers, so the Defendants entered into unlawful referral arrangements with prescribing providers and No-Fault clinics with the aim of steering prescriptions to the Pharmacy Defendants rather than the claimant's pharmacy of choice.

293.    As explained below, there is significant evidence that the prescriptions for drugs billed by the Pharmacy Defendants to Allstate under New York's No-Fault laws were funneled to the Pharmacy Defendants pursuant to unlawful referral relationships.

294.    These indicia of collusive relationships between the Defendants and prescribing providers and/or clinic controllers include, among other things, the prescribing providers' histories of involvement in similar alleged schemes to defraud, the routine transmission of prescriptions to the Pharmacy Defendants by telephone or facsimile without excuse or justification, the routine use of pre-printed prescription forms to prescribe Topical Pain Products, and the prescribing providers' and clinics' funneling of the prescriptions directly to the Pharmacy Defendants without giving claimants any choice of where to fill their prescription.

A.    MONEY LAUNDERING CONDUCT

295.    The Defendants used payments between the Pharmacy Defendants and the Shell Company Defendants to fuel the scheme and to conceal the proceeds of the fraudulent claims.

296.    The Shell Company Defendants were purposely named after "wholesale" companies, which made them look like legitimate companies, where in fact they were not.

297.    In reality, the Shell Company Defendants existed to launder the proceeds collected by the Pharmacy Defendants on fraudulent claims.

298.    The Pharmacy Defendants paid substantial sums to the Shell Company Defendants, but received nothing in return.

299.    The payments were structured to look like legitimate transactions between the Pharmacy Defendants and the Shell Company Defendants, but no goods or services were ever exchanged between the companies.

300.    The Pharmacy Defendants made payments to KD Wholesale Inc., none of which were for legitimate services, including the representative examples below:



**GALAXY RX INC.**

1367

1-2/210

DATE 12/2/2022

PAY TO THE ORDER OF _KD Wholesale Inc_ $21,265 75/100

_Twenty One Thousand two Hundred Six Dollars 75/100_

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

⑈ ⑆021000021⑆

---

**ASG RX CORP**    10-22

1059

50-791/214

DATE 11/18/22

PAY TO THE ORDER OF _KD Wholesale Inc_ $12,336. 21/xx

_twelve thousand three hundred thirty six_ DOLLARS

**Capital One**
Capital One, N.A.

FOR _____

⑈001059⑆ ⑆214079120⑆

---

167 RX INC
55 E 167TH ST
BRONX, NY 104528206

923

1-2/210

DATE 1-25-23

PAY TO THE ORDER OF _KD Whlesle Inc_ $20,512 51/xx

_twenty thousand five hundred twelve 51/xx_ DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

⑈000923⑆ ⑆021000021⑆

41

**STORY AVE PHARMACY INC DBA 99 CENTS & UP**
1903 STORY AVE
BRONX, NY 104732705

2665

1-2/210

DATE 2/27/23

PAY TO THE ORDER OF __ KD Wholesale Inc __ $ 22371 69/100

twenty two thousand three hundred seventy one dollars 69/100 —————— DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

"002665" ⑆021000021⑆

---

**S&N NYC INC**

1313

1-2/210

DATE 5/8/23

PAY TO THE ORDER OF __ KD Wholesale Inc __ $ 26,621 00/100

Twenty Six thousand Six hundred twenty one —————— DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

"001313" ⑆021000021⑆

---

**CYPRESS RX INC**
1105 CYPRESS AVE
RIDGEWOOD, NY 11385-6087

1-2/210

1027

DATE 8/22/23

PAY TO THE ORDER OF __ KD Wholesale Inc __ $ 19,875 XX/100

Nineteen Thousand Eight Hundred Seventy Five —————— DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO _____

⑆021000021⑆        1027

42

301.    The Pharmacy Defendants made payments to MBJ Wholesale Inc., none of which were for legitimate services, including the representative examples below:

2168

**FAMILY CARE PHARMACY OF LI INC**
33 WALT WHITMAN RD STE 100
HUNTINGTON STATION, NY 11746-3629

CHASE ○
JPMorgan Chase Bank, N.A.
www.Chase.com

DATE 11/15/22   1-2/210

PAY TO THE ORDER OF _MBJ Wholesale Inc_ $ 12,121

_Twelve thousand one hundred twenty one_ DOLLARS

⑈"002168"⑈ ⑆02⑈0000⑈2⑈⑈

---

1062

**ASG RX CORP**   10-22   50-751/214

DATE 12/1/22

PAY TO THE ORDER OF _MBJ Wholesale Inc_ $ 9,621 92/XX

_nine thousand six hundred twenty one_ 92/— DOLLARS

**Capital**One®
Capital One, N.A.

FOR

⑈"001062"⑈ ⑆0214079⑈2⑈⑈

---

1432

**GALAXY RX INC.**

DATE 1/13/2023   1-2/210

PAY TO THE ORDER OF _MBJ wholesale inc_ $ 14,391 87/100

_Fourteen thousand three hundred ninety_ DOLLARS 87/—

**CHASE** ○
JPMorgan Chase Bank, N.A.
www.Chase.com

⑆02⑈0000⑈2⑈⑈

917

**167 RX INC**
55 E 167TH ST
BRONX, NY 104528206

DATE 1-10-23    1-2/210

PAY TO THE ORDER OF _MBJ Whlsale Inc_    $ 14,560 02/x

_Fourteen thousand five hundred sixty 02/x_    DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

_Ruben Im_

FOR _____

⑈000917⑈ ⑈021000021⑈ ▇▇▇▇▇▇

---

653

**ESMERALDA PHARMACY INC**    1-1367/260
244

4/18/23  Date

Pay to the Order of _MBJ Whlsale Inc_    $ 13,600

_Thirteen thousand Six hundred_    Dollars

**TD Bank**
America's Most Convenient Bank®

For _____

⑈026013673⑈ ▇▇▇▇▇▇    0653

---

2729

**STORY AVE PHARMACY INC DBA 99 CENTS & UP**
1903 STORY AVE
BRONX, NY 104732705

DATE 4/16/23    1-2/210

PAY TO THE ORDER OF _MBJ Whlsale Inc_    $ 22377 00/x

_twenty two thousand three hundred seventy seven dolls 00/x_    DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

⑈002729⑈ ⑈021000021⑈ ▇▇▇▇▇▇

45

302.    The Pharmacy Defendants made payments to YBJ Wholesale, none of which were for legitimate services, including the representative examples below:

**ESMERALDA PHARMACY INC**

434

1-1367/260
244

11-3-22

Date

Pay to the
Order of  YBJ Wholesale Inc    $ 15,668

Fifteen thousand Six hundred Sixty Eight dollars    Dollars

**TD Bank**
America's Most Convenient Bank®

For

⑈0260136073⑈    0434

---

³

S&N NYC INC

1338

1-2/210

DATE 11-4-22

PAY
TO THE
ORDER OF  YBJ Wholesale Inc    $ 18,975.45

Eighteen thousand Nine hundred Seventy five    DOLLARS

CHASE ○
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR

⑈001338⑈ ⑈021000021⑈

---

CHASE ○
JPMorgan Chase Bank, N.A.
www.Chase.com

**FAMILY CARE PHARMACY OF LI INC**
33 WALT WHITMAN RD STE 100
HUNTINGTON STATION, NY 11746-3629

2156

1-2/210

DATE 11/14/22

PAY
TO THE
ORDER OF  YBJ Wholesale Inc    $ 11,015

Eleven thousand Fifteen    DOLLARS

E

⑈002156⑈ ⑈021000021⑈

SECURITY FEATURES INCLUDE TRUE WATERMARK PAPER, HEAT SENSITIVE ICON AND FOIL HOLOGRAM

**ASG RX CORP** 10-22

1066

50-781/214

DATE 12/12/22

PAY TO THE ORDER OF _YBT wholesale Inc_ $ 12,249.⁰⁶

_twelve thousand two hundred Forty nine_ ⁰⁶ DOLLARS

**Capital**One®
Capital One, N.A.

FOR _____

_[signature] Legal Nature_

⑈⑈001066⑈⑈ ⑈:021407912⑈: ▮▮▮▮▮

---

1421

**GALAXY RX INC.**

DATE 1/3/2023 1-2/210

PAY TO THE ORDER OF _YBT wholesale Inc_ $ 13,652.⁰³/₀₀

_Thirteen Thousand six hundred fifty two_ ⁸³ DOLLARS

**CHASE** ○
JPMorgan Chase Bank, N.A.
www.Chase.com

_[signatures]_

⑈⑈ :021000021⑈: ▮▮▮▮▮

---

942

**167 RX INC**
55 E 167TH ST
BRONX, NY 104528206

DATE 3/30/23 1-2/210

PAY TO THE ORDER OF _YBT Wholesale Inc_ $ 25,550⁻

_Twenty five thousand Five hundred fifty_ ___ DOLLARS

**CHASE** ○
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

_[signature]_

⑈⑈000942⑈⑈ ⑈:021000021⑈: ▮▮▮▮▮

STORY AVE PHARMACY INC DBA 99 CENTS & UP
1903 STORY AVE
BRONX, NY 104732705

2675

1-2/210

DATE 3/28/23

PAY TO THE ORDER OF _YBJ Wholesale Inc_ | $ 26,133 20/100

_twenty six thousand one hundred thirty three dol 20/100_ ——— DOLLARS

CHASE ⬤
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

⑈002675⑈ ⑊021000021⑊

---

CYPRESS RX INC
1105 CYPRESS AVE
RIDGEWOOD, NY 11385-6087

1-2/210

1024

DATE 8/8/23

PAY TO THE ORDER OF _YBJ Wholesale Inc_ | $ 19,850 00/100

_Nineteen Thousand Eight Hundred Fifty_——— DOLLARS

CHASE ⬤
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO _____

⑊021000021⑊ ⑈1024

---

BRIAR DRUG STORE INC
DBA BRIARWOOD RX
8515 MAIN ST COMM7
JAMAICA, NY 11435

1619

50-791/214

DATE 02 01 23

PAY TO THE ORDER OF _YBJ WholeSales inc_ | $ 5873 12/100

_five thousand eight hundred seventy three_ DOLLARS

CapitalOne®
Capital One, N.A.

FOR _____

_Anna Abramova_

⑈001619⑈ ⑊021407912⑊

49

303.    Upon information and belief, the Pharmacy Defendants' payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale were funded using the proceeds collected in connection with fraudulent claims; indeed, the Pharmacy Defendants' payments contain the hallmarks of sham money laundering transactions.   For example, the Galaxy Rx payments highlighted in sections above bear a direct resemblance to the Galaxy Rx money laundering payments discovered as part of Polvanova's prosecution in *United States v. Aminov*, No. 1:23-cr-00110 (S.D.N.Y.):[1]

---

[1] All of the Galaxy Rx checks were issued from the same JP Morgan Chase Bank account ending in -3638.  *See* Exhibit 6.



304. Additionally, some of the Pharmacy Defendants have been implicated in other money laundering schemes. For example, Family Care's involvement in money laundering transactions was revealed during testimony at trial in *United States v. Rasulov*, No. 1:20-cr-00653 (S.D.N.Y.).

305. According to non-party Arthur Sattarov (an admitted money launderer), Family Care was part of a scheme that converted pharmacy checks to cash. *See* Exhibit 7.

306. According to Sattarov, the scheme involved checks that were issued by pharmacies engaged in fraud; once issued, the checks were deposited into bank accounts of several different

shell companies that were deliberately named after other legitimate wholesale and transportation companies:[2]



307.    The payments issued by the pharmacies were designed to look like legitimate business transactions even though no actual goods or services were exchanged:[3]



```
13    Q.  What is this?

14    A.  Check from Family Care Pharmacy of Long Island given to

15    NDT Wholesale LTD for $241,765.80, and it's dated May 30th,

16    2020.

17    Q.  Do you see on the left-hand side in the memo line, it says

18    invoice?

19    A.  Yes.

20    Q.  Was there any invoice in connection with this check?

21    A.  No, there was not.

22    Q.  Was this check for any actual business?

23    A.  No, it was not.
```

---

[2] NDT Wholesale Ltd is a sham entity controlled by Sattarov, who admitted that the company was not engaged in any legitimate business, and existed only to launder scheme proceeds.  *See* Exhibit 7, at pp. 807-819.

[3] *See* Exhibit 7.

308.   The Defendants ran a similar scheme in this case; indeed, the Shell Company Defendants also cashed checks from other non-party pharmacies identified during Sattarov's trial testimony, including non-party Mount Sinai Health Inc.:



309.   According to Sattarov, checks previously paid by Mount Sinai Health were converted to cash as part of the prior money laundering scheme:[4]

---

[4] *See* Exhibit 7, at pp. 837-838.

```
19  Q.  So what does the attachment show?

20  A.  Picture of two checks from two different pharmacies issued

21  to NDT Wholesale, my company.

22  Q.  What are the pharmacies issuing these checks?

23  A.  First one is Leaf Wellness Inc. for $70,000, and the second

24  one is Mount Sinai Health Inc. for $50,000.

                              ***

4   Q.  What did you do with these checks?

5   A.  I deposited to the business account and then wired the

6   money, same as before, and brought back cash, gave him back

7   cash.
```

310.    Additionally, several Pharmacy Defendants, including Briar, engaged in similar transactions with other shell companies that existed solely to launder the proceeds of No-Fault fraud schemes:

311.    Notably, several of the other shell companies paid by Briar are implicated in other No-Fault fraud schemes, which also involved money laundering and cash conversion.  *See Allstate Ins. Co. v. Better Hands Physical Therapy P.C.*, No. 24-cv-04580 (E.D.N.Y.).

312.    The same is true for Galaxy Rx, which also engaged in money laundering transactions with other shell companies.

313.    Overall, the Pharmacy Defendants paid over $3,775,000.00 to the Shell Company Defendants during the course of this scheme.  *See* Exhibits 8-10.

314.    In this case, however, the Defendants' scheme involved the additional step of transferring the monies to gold and jewelry companies after the checks were deposited into the shell company accounts.  Upon information and belief, these transactions were intended to conceal the ultimate recipients of the Pharmacy Defendants' illegal proceeds and perpetuate the Defendants' scheme to defraud.

315.    In other pharmacy fraud cases, the parties have used transactions involving gold and other precious metals as a means to launder and conceal scheme proceeds.  *See Gilead Sciences, Inc. v. Safe Chain Solutions, LLC*, No. 1:21-cv-04106  (E.D.N.Y.) (alleging scheme involving the laundering of illegal proceeds from prescription-drug counterfeiting scheme through sham transactions between shell companies and gold dealers located in Manhattan's Diamond District).

316.    Here, the Shell Company Defendants each purported to purchase large quantities of gold and jewelry from a slew of the same entities, including, but not necessarily limited to, non-parties Avital Gold & Platinum Inc., Alishaev Brothers AY, Inc., Aqua Master AY, Inc., Prestige Collection Inc., Italian Elegant Jewelry, LLC, Albert's Gold & Silver Inc., ENE Buying G & D

LLC, King of CVD Diamonds Corp., YN Platinum Inc., and R E L International Inc. (collectively, the "Dealers"). *See* Exhibit 11.

317.    Many of the non-party Dealers were located in Manhattan's "Diamond District" on 47th Street.  Notably, one of the Dealers (non-party Avital Gold & Platinum) actually has a history of transacting with a different pharmacy owned by Borukhov (non-party Taira Rx. Corp. d/b/a Forest Drugs).[5]

318.    Upon information and belief, the transactions between the Shell Company Defendants and the non-party Dealers were phony because nothing was actually purchased; instead, the proceeds were converted to untraceable cash in exchange for a fee.

319.    For example, on January 25, 2023, 167 Rx issued a check to KD Wholesale in the amount of $20,512.51:



---

[5] Borukhov and Taira were implicated in a similar No-Fault fraud scheme.  *See Gov't Empls. Ins. Co., et al.,v. MSB RX Corp et al.*, No. 1:19-cv-00232 (E.D.N.Y.).

320.    The following day, on January 26, 2023, KD Wholesale issued a check to non-party Avital Gold & Platinum in the amount of $18,827.00:



321.    The Dealers created invoices for the transactions, which purportedly involved sales of bulk jewelry and related items, as shown in the following examples:

## Albert's Gold and Silver

20 West 47th Street
New York NY 10036
TEL:    212-869-0838 ,
EMAIL: Mikeandsonscasting@gmail.com

# INVOICE

Invoice # : 19883
Date : 2023-10-04

### INVOICE TO

## MBJ WHOLESALE INC.

3091 BRIGHTON 5TH STREET APT 4S
BROOKLYN, NY, 11235

P: 917 501 0024
Contact:

| FROM MEMO | MEMO DATE | TERMS | INVOICE DATE | DUE DATE | SHIPVIA |
|---|---|---|---|---|---|
| | | | 10/04/2023 | 10/04/2023 | |

Payment in full is due on the due date. 2. if payment or merchandise is not received by Albert's Gold and Silver. On or by that date, late fees shall apply commencing on the (30th) thirtieth day after the due date, at the rate of (1.5%) ONE AND ONE HALF PERCENT PER MONTH on the unpaid balance, or maximum allowed by New York State law. 3. If the customer identified above sends a messenger to pick up merchandise from Albert's Gold and Silver. it shall be as if the customer has picked up the merchandise. 4. No offsets will be allowed for any reason. 5. In the event of default, the customer understands that the credit card on file with Albert's Gold and Silver May be charged for this invoice. 6. In the event collection or legal action must be taken to recover money owed to Albert's Gold and Silver By the customer named above, the customer agrees to pay all reasonable and legal fees in addition to the amount due. 7. The laws of the STATE OF NEW YORK Shall apply, and any disputes between the parties shall be argued before the court of the STATE of New York, County of New York. 8. These are the entire terms of sale, no part of which may be changed except in writing and agreed by the parties named herein. Customer certifies that he / she has read the terms of this sale, and agrees to be bound by the same. 10. If any of the terms of sale are deemed illegal or unenforceable by court of law as heretofore defined. It shall have no bearing on any of the other terms.

| ITEM | QUANTITY | DESCRIPTION | TOTAL PRICE |
|---|---|---|---|
| | 1 | 23.35 oz | 42,555.00 |

## Albert's Gold and Silver

20 West 47th Street
New York NY 10036
TEL:    212-869-0838 ,
EMAIL: Mikeandsonscasting@gmail.com

# INVOICE

Invoice # : 19897
Date : 2023-09-02

### INVOICE TO

## YBJ WHOLESALE INC

147-12 72ND DRIVE 3RD FLOOR
FLUSHING, NY, 11367

P: 917 501 0024
Contact:

| FROM MEMO | MEMO DATE | TERMS | INVOICE DATE | DUE DATE | SHIPVIA |
|---|---|---|---|---|---|
| | | | 09/02/2023 | 09/02/2023 | |

Payment in full is due on the due date. 2. if payment or merchandise is not received by Albert's Gold and Silver. On or by that date, late fees shall apply commencing on the (30th) thirtieth day after the due date, at the rate of (1.5%) ONE AND ONE HALF PERCENT PER MONTH on the unpaid balance, or maximum allowed by New York State law. 3. If the customer identified above sends a messenger to pick up merchandise from Albert's Gold and Silver. it shall be as if the customer has picked up the merchandise. 4. No offsets will be allowed for any reason. 5. In the event of default, the customer understands that the credit card on file with Albert's Gold and Silver May be charged for this invoice. 6. In the event collection or legal action must be taken to recover money owed to Albert's Gold and Silver By the customer named above, the customer agrees to pay all reasonable and legal fees in addition to the amount due. 7. The laws of the STATE OF NEW YORK Shall apply, and any disputes between the parties shall be argued before the court of the STATE of New York, County of New York. 8. These are the entire terms of sale, no part of which may be changed except in writing and agreed by the parties named herein. Customer certifies that he / she has read the terms of this sale, and agrees to be bound by the same. 10. If any of the terms of sale are deemed illegal or unenforceable by court of law as heretofore defined. It shall have no bearing on any of the other terms.

| ITEM | QUANTITY | DESCRIPTION | TOTAL PRICE |
|---|---|---|---|
| | 1 | 16.03 oz | 31,115.00 |

322.    Even if the Shell Company Defendants received gold or jewelry from the Dealers, there still was no legitimate business reason for neighborhood pharmacies to purchase millions of dollars in untraceable gold and jewelry.  The illegitimate payments exchanged between the Shell Company Defendants and the Dealers are listed in Exhibits 8-10 attached hereto.

### B.    UNLAWFUL REFERRALS

323.    The Defendants violated New York law by colluding with other No-Fault providers and clinics to generate prescriptions for unnecessary drugs.

324.    The Defendants' scheme was designed such that claimants did not have a choice where to fill their prescriptions; rather, the prescriptions were channeled to the Pharmacy Defendants so they could bill for the drugs.

325.    The success of the scheme depended upon unlawful referral arrangements, which the Defendants fostered with providers and clinics implicated in other No-Fault fraud schemes.

326.    For example, the Pharmacy Defendants billed for prescriptions issued from a No-Fault clinic located at 3910 Church Avenue in Brooklyn, NY (the "Church Ave Clinic").  Notably, the Church Ave Clinic was investigated as part of a long-running criminal investigation into fraudulent No-Fault claims.  According to a search warrant application, an undercover investigation produced evidence of bogus treatment and fraudulent billing involving several providers, including providers that issued prescriptions billed for by the Pharmacy Defendants. *See* Exhibit 12.

327.    Moreover, a provider formerly associated with the Church Ave Clinic reported that the facility was owned and controlled by laypersons, and that the providers billed for unnecessary services that were ordered because of unlawful referral arrangements.  *See* Exhibit 13.

328.    The Pharmacy Defendants also billed for drugs prescribed by providers that worked for non-parties Metro Pain and Tri-borough Medical, both of which have a long history of involvement in No-Fault fraud schemes.  *See State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-cv-05523 (E.D.N.Y.); *Allstate Ins. Co. v. Shapiro, et al.*, No. 21-cv-05586 (E.D.N.Y.).   Providers who worked for Metro Pain and Tri-borough have reported that they were required to authorize prescriptions of Topical Pain Products as a condition of employment.  *See* Exhibit 1.  At least one former provider's credentials were used to create fraudulent prescriptions when they failed to follow the prescription drug protocols.  *See* Exhibit 14.

329.    Other prescriptions were issued in the name of prescribers who later reported that their names, licenses, and electronic prescribing credentials were stolen and used by clinic operators to issue fraudulent prescriptions.  *See* Exhibit 15.  Notably, Levtsenko has her own history of involvement in No-Fault schemes, having been accused of ceding control of a PC to unlicensed individuals who used the PC to "prescribe unnecessary and expensive pharmaceuticals."  *See  Liberty Mut. Ins. Co. v. RHS Chiropractic, P.C., et al.*, No. 1:24-cv-02172 (E.D.N.Y.).

C.    FRAUDULENT PHARMACY BILLING

330.    Unlike legitimate pharmacies, the Pharmacy Defendants only billed for certain types of drugs.

331.    The scheme focused on Topical Pain Products because the Pharmacy Defendants could acquire the drugs at a low cost and then charge high prices to insurers.

332.    The Defendants devised and executed their scheme knowing that (a) the prescriptions were issued pursuant to a predetermined protocol of medically unnecessary and ineffective drugs, including Topical Pain Products, which elevated profits over genuine patient

60

care, (b) the prescriptions were invalid under New York law, (c) the prescriptions were issued in exchange for unlawful kickbacks or other incentives, and (d) the No-Fault claim documents submitted to Allstate falsely represented the Pharmacy Defendants' eligibility to collect No-Fault payments.

### 1.    **Predetermined Prescription Protocol**

333.    The Defendants' scheme was designed to limit prescribers to a predetermined set of drugs, which included topical gels, ointments, creams, patches, and NSAIDS; in doing so, the Defendants ensured that these drugs and medications were prescribed in all cases, regardless of whether the patients even needed or wanted them.

334.    As a result, the Pharmacy Defendants billed Allstate for the same recurring set of unnecessary, unwarranted, and ineffective Topical Pain Products, including: lidocaine 5% ointment, diclofenac sodium 3% gel, and lidocaine patches.

335.    The Defendants steered providers to prescribe the specific Topical Pain Products to be billed by the Pharmacy Defendants, in place of other less expensive products, to maximize the amounts collected by the Pharmacy Defendants in violation of New York's No-Fault Laws.

336.    The same Topical Pain Products were ordered for different claimants on the same day by the same prescriber, which is evidence that these drugs were prescribed as a part of a predetermined treatment protocol without any regard for whether the drugs were necessary or effective.

337.    The chart below contains representative examples of instances where the same prescriber ordered the same Topical Pain Product for different claimants on the same day:

| Claim Number | Claimant Initials | Prescription Date | Medication Prescribed | Prescriber | Pharmacy Defendant |
|---|---|---|---|---|---|
| 0641061742 | N.N. | 12/23/2021 | Cyclobenzaprine 7.5mg; Diclofenac sodium 3% gel; | Kyungsook Bu, NP | 167 Rx |

| Claim Number | Claimant Initials | Prescription Date | Medication Prescribed | Prescriber | Pharmacy Defendant |
|---|---|---|---|---|---|
| | | | Celecoxib 200mg; Lidocaine 5% ointment | | |
| 0641061742 | B.R. | 12/23/2021 | Cyclobenzaprine 7.5mg; Diclofenac sodium 3% gel; Celecoxib 200mg; Lidocaine 5% ointment | Kyungsook Bu, NP | 167 Rx |
| 0585465610 | H.S. | 9/17/2020 | Naproxen 550mg; Lidocaine 5% ointment | Gamil Kostandy, M.D. | ASG |
| 0588295724 | R.R. | 9/17/2020 | Naproxen 550mg; Lidocaine 5% ointment | Gamil Kostandy, M.D. | ASG |
| 0694129883 | M.C. | 12/30/2022 | Lidocaine 5% ointment; Cyclobenzaprine 7.5mg | Idy Liang, NP | Better Soon |
| 0694129883 | M.M. | 12/30/2022 | Lidocaine 5% ointment; Cyclobenzaprine 7.5mg | Idy Liang, NP | Better Soon |
| 0690437330 | P.T. | 12/30/2022 | Lidocaine 5% ointment; Cyclobenzaprine 7.5mg | Idy Liang, NP | Better Soon |
| 0619620460 | S.W. | 2/6/2022 | Acetaminophen 500mg; Lidocaine 5% ointment | Dmitri Petrochenko, M.D. | Briar |
| 0656606209 | C.H. | 2/6/2022 | Acetaminophen 600mg; Lidocaine 5% ointment | Dmitri Petrochenko, M.D. | Briar |
| 0720753235 | A.L. | 9/21/2023 | Naproxen-Esomeprazole 375-20mg; Diclofenac sodium 3% gel; Lidothol patch 4.5%/5% | Amira Nasser, PA | Family Care |
| 0720753235 | E.P. | 9/21/2023 | Naproxen-Esomeprazole 375-20mg; Diclofenac sodium 3% gel; Lidothol patch 4.5%/5% | Amira Nasser, PA | Family Care |
| 0633114905 | A.M. | 7/15/2021 | Ibuprofen 600mg; Cyclobenzaprine 10mg; Diclofenac sodium 3% gel; Lidocaine 5% ointment | Ju Lee Youn, N.P. | S&N |
| 0633114905 | A.M. | 7/15/2021 | Ibuprofen 600mg; Cyclobenzaprine 10mg; Diclofenac sodium 3% gel; Lidocaine 5% ointment | Ju Lee Youn, NP | S&N |
| 0690179056 | K.S. | 12/14/2022 | Lidocaine 5% ointment; Celebrex 200mg; Omeprazole 20mg; Cyclobenzaprine 5mg; | Phelan Clancy, NP | Story Ave |
| 0674883961 | O.M. | 12/14/2022 | Lidocaine 5% ointment; Celebrex 200mg; Omeprazole 20mg; Cyclobenzaprine 5mg | Phelan Clancy, NP | Story Ave |

| **Claim Number** | **Claimant Initials** | **Prescription Date** | **Medication Prescribed** | **Prescriber** | **Pharmacy Defendant** |
|---|---|---|---|---|---|
| 0713860617 | R.T. | 5/19/2023 | Lidocaine 5% ointment | Jean Pierre Barakat, M.D. | Better Soon & Cypress |
| 0713860617 | A.G. | 5/19/2023 | Lidocaine 5% ointment | Jean Pierre Barakat, M.D. | Better Soon & Cypress |

338.   The Defendants targeted and selected these particular Topical Pain Products because they knew the drugs could be acquired at a low cost, and also knew that all No-Fault claims were priced and paid according to the AWP.  This deliberate targeting of low-cost drugs allowed the Defendants to generate substantial profits each time the Pharmacy Defendants billed for these drugs.

339.   The charts attached hereto as Exhibits 16-25 lay bare the Defendants' disproportionate focus on billing for Topical Pain Products, including the most commonly billed-for products listed below:

| **Drug Name** | **NDC** | **Pharmacy Defendant** |
|---|---|---|
| Lidocaine 5% Ointment | 51672-3008-05 | Better Soon; Family Care; Galaxy |
| Lidocaine 5% Ointment | 65162-0918-53 | Galaxy; Cypress |
| Lidocaine 5% Ointment | 64380-0789-33 | Cypress |
| Lidocaine 5% Ointment | 00603-1880-16 | Better Soon; ASG; Cypress |
| Lidocaine 5% Ointment | 67877-0473-80 | 167 Rx |
| Lidocaine 5% Ointment | 52565-0008-55 | ASG; Briar; Esmeralda |
| Lidocaine 5% Ointment | 68462-0418-27 | S&N |

| Drug Name | NDC | Pharmacy Defendant |
|---|---|---|
| Lidocaine 5% Ointment | 65162-0918-53 | Galaxy;<br>Cypress |
| Lidocaine 5% Ointment | 70752-0113-04 | Cypress |
| Lidocaine 5% Patches | 00591-3525-30 | ASG;<br>Briar;<br>Cypress |
| Lidocaine 5% Patches | 00591-2679-30 | ASG |
| Diclofenac Sodium 3% Gel | 51672-1363-07 | Family Care;<br>ASG;<br>Galaxy |
| Diclofenac Sodium 3% Gel | 68462-0355-94 | Briar;<br>Family Care;<br>S&N;<br>Story Ave;<br>Cypress |
| Diclofenac Sodium 3% Gel | 53225-1070-01 | Cypress |
| Diclofenac Sodium 3% Gel | 16571-0203-10 | Cypress |
| Diclofenac Sodium 3% Gel | 64862-0355-94 | 167 Rx |
| Lidothol patches | 53225-1025-01 | Family Care;<br>Cypress |

340.    One of the most popular drugs pushed by the Defendants was lidocaine 5% ointment, which the Pharmacy Defendants billed under NDC Nos. 51672-3008-05, 00603-1880-16, 67877-0473-80, 52565-0008-55, 00591-3525-30, 68462-0418-27, 65162-0918-53, 64380-0789-33, and/or 70752-0113-04.

341.    The published AWP of a 50-gram package of lidocaine 5% ointment sold under NDC Nos. 51672-3008-05, 52565-0008-55, 65162-0918-53, and 64380-0789-33 is $380.93.

342.    The Pharmacy Defendants could charge approximately $1,523.72 for a 200-gram supply of lidocaine 5% ointment (after application of the 20% reduction required under applicable New York Law).

343.    The wholesale acquisition price (WAC) price for lidocaine 5% ointment sold under NDC Nos. 51672-3008-05, 52565-0008-55, 65162-0918-53, and 64380-0789-33 ranges from $15.00 to $50.00 per 50 grams. The WAC is an important metric because it generally represents the actual price paid by the pharmacy to acquire the drug.

344.    Therefore, the Defendants realized substantial profits ranging from $609.44 to $1,299.07 each time the Pharmacy Defendants billed for 200 grams of lidocaine 5% ointment under NDC Nos. 51672-3008-05, 52565-0008-55, 65162-0918-53, and 64380-0789-33.

345.    The Defendants also pushed the generic form of diclofenac sodium 3% gel.

346.    For example, Briar, Family Care, S&N, Story Ave, and Cypress billed for generic diclofenac sodium 3% gel under NDC No. 68462-0355-94.

347.    The published AWP of diclofenac sodium 3% gel under NDC No. 68462-0355-94 is $1,179.46 per 100-gram package, which means the Pharmacy Defendants could bill Allstate a total of $943.57 for each 100-gram supply.

348.    In this case, prescriptions for diclofenac sodium 3% gel were issued for a 200-gram supply, which allowed the Pharmacy Defendants to bill Allstate a total of $1,887.14 each time the drug was prescribed.

349.    However, the WAC of diclofenac sodium 3% gel sold under NDC No. 68462-0355-94 is only $92.97 for a 100-gram supply.

350.    The Defendants deliberately billed for diclofenac sodium 3% gel under NDC No. 68462-0355-94 to exploit the steep difference between the AWP (high) and actual acquisition price (low); indeed, the Pharmacy Defendants could generate a profit exceeding $1,700.00 every time a provider prescribed diclofenac sodium 3% gel.

351.    Throughout the course of this scheme, the Defendants were able to generate substantial profits through the Pharmacy Defendants by steering or inducing providers to prescribe drugs that could be acquired at a fraction of the drugs' AWPs.

## 2.    Billing for Medically Worthless Topical Pain Products

352.    The Topical Pain Products billed for by the Pharmacy Defendants—namely diclofenac sodium 3% gel, lidocaine 5% ointment, and lidocaine patches—were not medically necessary and not indicated for the treatment of musculoskeletal injuries; rather, these drugs were pushed to claimants because of their potential reimbursement value even though lower-priced alternatives were available without a prescription.

353.    Topical pain medications, including topical NSAIDS, lack proven effectiveness for treatment of widespread musculoskeletal pain.

354.    Topical pain medications may be indicated where the patient failed a trial of oral medications, has specific allergies to certain oral medications, or is incapable of swallowing pills.

355.    However, despite no documentation of an intolerance to oral NSAIDS or muscle relaxants, the Pharmacy Defendants' claimants were prescribed both topical and oral NSAIDS to treat a diagnosis of musculoskeletal pain.

356.    The specific Topical Pain Products billed to Allstate by the Pharmacy Defendants are not approved or intended to treat musculoskeletal injuries; rather, they are approved for the treatment of superficial pain, skin conditions, or nerve pain.

357.    Less toxic formulations of topical lidocaine and diclofenac are available over the counter at significantly lower cost.

358.    By prescribing and dispensing a predetermined protocol of among the most expensive topical pain medications, the prescribing providers and Defendants subjected the

patients to unnecessarily high concentrations of topical medications intended to treat conditions other than musculoskeletal pain for the purpose of exploiting these patients' available No-Fault benefits.

### a.    Unnecessary Lidocaine 5% Ointment

359.    The Pharmacy Defendants billed Allstate for lidocaine 5% ointment.  *See* Exhibits 16-25.

360.    Lidocaine 5% ointment is not a first-line treatment for musculoskeletal pain; rather, it is indicated for temporary pain relief for minor burns, skin abrasions, insect bites, and as a topical anesthetic.

361.    Indeed, the product labeling for lidocaine 5% ointment indicates that the drug is not effective when applied on intact skin, which is because lidocaine 5% ointment is incapable of sufficiently penetrating intact skin. Even though topical lidocaine is sometimes used to treat neuropathic pain in adults, high concentrates of the drug must be used because topical lidocaine crosses the skin poorly.

362.    The patients prescribed lidocaine 5% ointment billed to Allstate by the Pharmacy Defendants did not have any documented minor skin conditions or true neuropathic pain warranting lidocaine 5% ointment.

363.    The Pharmacy Defendants' bills for lidocaine 5% ointment are fraudulent and non-compensable, and Allstate is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibits 16-25.

### b.    Unnecessary Lidocaine Patches

364.    ASG, Briar, Family Care, and Cypress billed Allstate for topical lidocaine 5% patches and Lidothol (lidocaine/menthol 4.5%-5%) patches ("Lidocaine Patches"). *See* Exhibits 16-25.

365.    Lidocaine Patches are topical analgesics, which can be used to temporarily relieve minor muscle and joint aches and pains.

366.    The efficacy of these patches is very doubtful; they are not supported for use in patients with deep joint injuries (e.g., shoulder and spine injuries), or injuries in multiple areas.

367.    Rather, patches containing topical lidocaine are indicated for post-herpetic neuralgia, which is a condition causing nerve pain after shingles.

368.    Lidocaine Patches also carry an increased risk of lidocaine toxicity because the patch continuously exposes the skin to lidocaine.

369.    An overdose of topical lidocaine can be fatal if too much medicine is absorbed through the skin.

370.    The Lidocaine Patches billed by ASG, Briar, Family Care, and Cypress were ineffective and unnecessary because the drug is not proven to be safe or effective for treating deep joint pain in areas such as the shoulders or back.

371.    The Defendants also steered prescribers into ordering unnecessary Lidocaine Patches even though lidocaine 4% patches are available without a prescription and at a fraction of the cost; for example, a package of 15 lidocaine 4% patches (e.g., Salonpas patches) can be purchased at a neighborhood drug store without a prescription for approximately $25.00; notably, over-the-counter pharmacy products are not covered under No-Fault.

372.    In this case, the providers prescribed, and ASG, Briar, Family Care, and Cypress dispensed, the Lidocaine Patches despite the availability of an over-the-counter alternative at significantly lower cost.

373.    Moreover, the FDA categorizes Lidothol patches (NDC 53225-1025-01) as an unapproved drug, which may pose significant risks to patients:



| Proprietary Name | NDC Package Code | Strength | Dosage Form | Route | Appl. No. | Labeler Name | Product NDC | Nonproprietary Name | Substance Name | Product Type Name | Start Marketing Date | End Marketing Date | Market Category | Package Description | Pharm Class |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ● LIDOTHOL | 53225-1025-1 | 4.5 g/1, 5 g/1 | PATCH | TOPICAL | | Terrain Pharmaceuticals | 53225-1025 | LIDOCAINE, MENTHOL | LIDOCAINE; MENTHOL | HUMAN PRESCRIPTION DRUG | 06/16/2015 | N/A | UNAPPROVED DRUG OTHER | 15 PATCH in 1 BOX (53225-1025-1) / 1 PATCH in 1 PATCH | Amide Local Anesthetic [EPC], Amides [CS], Antiarrhythmic [EPC], Local Anesthesia [PE] |

374.    Such unapproved drugs have not been reviewed by the FDA for safety, effectiveness, and quality; therefore, there is no evidence that Lidothol patches are safe and effective for their intended use.

375.    Federal law requires that all new drugs be demonstrated as safe and effective for their intended use prior to marketing with few exceptions (i.e., subject to a drug efficacy study implementation program, no FDA-approved drugs to treat a serious medical condition, or insufficient supply of an FDA-approved drug); no such exception applies to Lidothol patches to lawfully permit it to be marketed as an unapproved prescription drug.

376.    Additionally, New York law requires that wholesalers located outside of New York State that ship, mail, or deliver prescription drugs to other establishments residing in the state be registered with the New York State Education Department. N.Y. Educ. Law § 6808-b; 8 N.Y.C.R.R. § 63.8. Registration serves several purposes, including assuring the purity, potency, and safety of drugs dispensed in New York.

377.    Family Care and Cypress purportedly acquired Lidothol patches from non-party Terrain Pharmaceuticals ("Terrain"), which is a Nevada-based wholesaler. Terrain was not

registered with the New York State Board of Pharmacy during any part of the relevant period and thus was not permitted to ship, mail, or deliver Lidothol patches to pharmacies registered in New York, including Family Care and Cypress.

378.    Even if Family Care and Cypress obtained the Lidothol patches from a supplier registered in New York, the bills are still not compensable under No-Fault because Lidothol patches are not approved, nor have they been proven effective for the treatment of musculoskeletal conditions.

379.    The inclusion of unapproved and ineffective drugs in the predetermined prescription protocols shows that the Defendants elevated profits over the well-being of claimants.

380.    Overall, the Pharmacy Defendants' bills for the ineffective and medically unnecessary Lidocaine Patches are fraudulent and non-compensable, and Allstate is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibits 16-25.

### c.    *Unnecessary Diclofenac Sodium 3% Gel*

381.    The Pharmacy Defendants billed for diclofenac sodium 3% gel, which is not effective, not approved, and not indicated for the treatment of musculoskeletal injuries, such as those sustained in a motor vehicle accident.

382.    Diclofenac sodium 3% gel is a topical drug approved by the FDA for treating a skin condition called actinic keratosis, which is characterized by rough, scaly lesions caused by long-term sun exposure.

383.    Diclofenac sodium 3% gel is designed for minimal depth of absorption, so that the drug remains in the skin, which helps optimize the treatment of actinic keratosis.

384.   Using diclofenac sodium 3% gel on patients without actinic keratosis needlessly exposes them to increased and unnecessary risks for skin irritation, hypersensitivity, and photosensitivity.

385.   Diclofenac gel also exists in a 1% concentration, which might be effective for treating pain in peripheral joints, such as the hand or knee; however, diclofenac sodium 1% gel is not effective for treating pain in larger or deeper joints, such as the spine or shoulder, because the gel cannot penetrate these areas.

386.   Like diclofenac sodium 3% gel, diclofenac sodium 1% gel is not effective for treating pain in multiple areas of the body.

387.   Moreover, even though diclofenac sodium 3% gel is triple the concentration of diclofenac sodium 1% gel, this difference does not mean that diclofenac sodium 3% gel is 3-times more effective for the treatment of joint pain; in fact, diclofenac sodium 3% gel is not indicated for treating this condition.  Plus, when applied topically, diclofenac sodium 3% gel is substantially more toxic than diclofenac sodium 1% gel on a systemic basis.

388.   Despite the risks, the Defendants incorporated diclofenac sodium 3% gel into the predetermined prescription protocol because the Fee Schedule prices diclofenac sodium 3% gel at a much higher rate than generic diclofenac sodium 1% gel.

389.   The generic diclofenac sodium 3% gel billed to Allstate by the Pharmacy Defendants has an AWP of $1,179.46 per 100-gram package

390.   However, generic diclofenac sodium 1% gel (NDC No. 65162-0833-66) has an AWP of less than $55.00 per 100-gram package.

391.   Since May 2020, diclofenac sodium 1% gel has been available without a prescription, which means that claimants could purchase a 100-gram tube of Voltaren topical 1%

gel (i.e., the brand-name version of diclofenac sodium 1% gel) on their own and without a prescription for less than $20.00.

392.    Accordingly, the Defendants were motivated by profit to ensure that prescribers ordered diclofenac sodium 3% gel for their patients instead of the less expensive diclofenac sodium 1% gel even though the 3% preparation is neither approved nor effective at treating joint pain.

393.    The Pharmacy Defendants were not eligible for No-Fault reimbursement for the diclofenac sodium 3% gel billed to Allstate because these drugs were not medically necessary or effective in treating the claimants' musculoskeletal conditions.

394.    The Defendants induced healthcare providers to prescribe diclofenac sodium 3% gel to permit the Defendants to submit inflated and/or excessive charges for this product.

395.    The Pharmacy Defendants' bills for diclofenac sodium 3% gel are fraudulent and non-compensable, and Allstate is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibits 16-25.

### 3.    Billing For Services Not Rendered As Represented

396.    There is evidence that the Pharmacy Defendants did not deliver the billed-for medications as represented on the delivery receipts submitted to Allstate.

397.    Signatures were placed on the Pharmacy Defendants' delivery receipts to create the impression that the drugs were delivered even though they were not.

398.    In many cases, the signatures appearing on delivery receipts and Assignment of Benefits Forms ("AOB") do not match the claimants' actual signatures, which are reflected on other documentation submitted to Allstate.

399.    S&N purportedly delivered drugs to claimant K.A. (claim no. 0624494290) on or about February 1, 2021. However, the signature identified as K.A.'s on the delivery receipt and on the AOB are not the same.

**S&N Delivery Receipt**



**S&N AOB**



400.    Story Ave purportedly delivered drugs to claimant M.P. (claim no. 0660305806) on or about February 1, 2021. However, the signature identified as M.P.'s on the delivery receipt and on the AOB do not match.

**Story Ave Delivery Receipt**



**Story Ave AOB**

### 4.    Using Prohibited Preprinted Prescription Forms

401.    The Pharmacy Defendants' No-Fault claims involved prescriptions that were issued using preprinted prescription forms.

402.    The Defendants used, created, and distributed preprinted prescription forms to prescribing providers as a means to solicit a steady stream of prescriptions for various unnecessary drugs and medications, particularly pre-selected Topical Pain Products that were part of the Pharmacy Defendants' predetermined protocol of drugs and medications.

403.    The use of such preprinted prescription forms constitutes unprofessional conduct in the practice of pharmacy, and also violates requirements of New York Public Health Law and New York Education Law governing the prescription of both controlled and non-controlled substances in the State of New York.

404.    First, the Defendants used these preprinted prescription forms to unduly influence prescribing providers to prescribe certain drugs and medications and then deprive patients of their right to fill prescriptions at a pharmacy of their choosing by causing the prescription to be filled at one of the Pharmacy Defendants for the Defendants' financial gain.

405.    Using these forms, the prescribing providers could conveniently mark the drug or medication, including Topical Pain Products, from a preprinted list identifying the particular drug and medication to be prescribed and then direct the prescription forms to one of the Pharmacy Defendants.

406.    For example, Story Ave billed for drugs prescribed to claimant B.B. (claim no. 0695156026) using a preprinted checklist:

This facsimile transmission is intended to be delivered to the named addressed and may contain information that is confidential privileged and proprietary or exempt from disclosure under applicable law, if it is received by a none other than their named addressed, please destroy.

**PHARMACY**

Name: ████ 2 ████    DOB: ████████    DOA: 11/28/22
Address:
Home Phone:
Medication Allergies:
Insurance:
Carrier/Claim #:

| Ibuprofen Tablets: | Celebrex Tablets: | Naproxen Tablets: | Cyclobenzaprine Tablets: |
|---|---|---|---|
| 1T BID | 1C BID   1C QD | 1T BID | 1T BID |
| Strength: 600mg___  800mg___ | Strength: 200mg___  400mg ✓ | Strength: 550mg___ | Strength: 7.5mg___  10mg ✓ |
| Disp: 30__ 60__ 90__ 120__ | Disp: 30__ 60__/90__ | Disp: 30__ 60__ | Disp: 30__ 60✓/90__ |

| Diclofenac Sodium Gel 3%: | Lidocaine Ointment 5%: | Lidocaine Patch 5%: APPLY 1-3 PATCHES AA QD (12 hours on and 12 hours off) | Pennsaid 2%: |
|---|---|---|---|
| AP AA TID UD | AP AA UP TO TID | Disp: 30__ 60__ 90__ | |
| Disp: 100gm__  200gm ✓ | Disp: 100gm__ 200gm__ 250gm__ | | Disp: 112___ |

| Zipsor Capsules (NSAID): | Topiramate: | Sumatriptan Tablets: | Other: |
|---|---|---|---|
| Strength: 25mg___ | | Strength: 25mg___  50mg___ | |
| Disp: 120capsules_____ | Disp: 25mg__ 50mg__ 100mg__ | Disp: 9__ 18__ | |

Doctors Name: Katusnia Paul N.P.
Address: 540 E. Fordham Rd #2B  Bronx, NY 10458
NPI#: 1396285185    License#: F308119-01

Statement of Medical Necessity:

Side effects associated with oral administration can often be avoided when medications are used topically. When medications are administered topically. They are not absorbed through the gastrointestinal system and do not undergo first pass hepatic metabolism. Topical creams/patches will be used in conjunction with lower doses of oral medications to prevent dependence and side effects of oral medications.

Physician Signature: _____ NP    Date: 12/06/22

407.    Briar also repeatedly billed for Topical Pain Products and other drugs and medications prescribed using a preprinted checklist, including the form below purportedly used by non-party Kim to prescribe lidocaine 5% ointment for claimant C.B. (claim no. 0641175914):

PRESCRIPTION ORDER FORM

408.   These fraudulent prescription forms thus steered the prescribing providers to adhere to the Pharmacy Defendants' preferred products—diclofenac sodium 3% gel, lidocaine 5% ointment, and Lidocaine Patches—which were billed for at excessive and inflated rates.

409.   Indeed, the preprinted prescription forms were limited to a menu of the specific desired drugs and medications and did not afford the prescribing providers any leeway to deviate from these products.

410.   The Pharmacy Defendants violated applicable licensing requirements by (a) colluding with prescribers to push specific products, and (b) advertising pharmacy services through

the use of preprinted "menus" of available products. *See* 8 N.Y.C.R.R. § 29.1(b)(2); 8 N.Y.C.R.R. § 29.7(12).

411.    Moreover, the use of such menu-like prescription forms to prescribe more than one drug or medication is prohibited under New York law because each drug or medication requires its own separate prescription. *See* N.Y. Educ. Law § 6810(7) ("No prescription for a drug written in this state…shall be on a prescription form which authorizes the dispensing…of any other drug. No drug shall be dispensed by a pharmacist when such prescription form includes any other drug.").

412.    In addition to steering the prescribing providers to a predetermined menu of drugs and medications to prescribe through a simple check mark or circle and causing the unlawful prescription of multiple drugs and medications on one form, these preprinted prescription forms are squarely in violation of the requirement under New York Public Health Law, effective March 27, 2016, that all practitioners electronically prescribe both controlled and non-controlled substances.

413.    Even if all of the prescriptions presented fell into one of the specific and limited exceptions to the electronic prescribing requirement (they do not), these preprinted prescription forms still are invalid and illegal because they are not written on a serialized Official New York State Prescription Form and, in many cases, are not "imprinted or stamped legibly and conspicuously with the printed name of the prescriber who has signed the prescription." *See* N.Y. Pub. Health Law § 281(1); N.Y. Educ. Law § 6810(8).

414.    Therefore, to the extent that the Pharmacy Defendants billed Allstate for drugs and medications purportedly dispensed pursuant to such prescriptions using these unlawful and

fraudulent preprinted prescription forms, they are not entitled to No-Fault reimbursement for these unlawfully prescribed drugs and medications under New York law.

5.    **Unauthorized Prescriptions**

415.    The Pharmacy Defendants regularly billed for drugs that were not prescribed in accordance with New York's electronic prescription mandate.

416.    There are limited exceptions to New York's electronic prescription mandate, such as an electric failure or systems failure that prevents the provider from prescribing electronically. None of the exceptions apply to the Pharmacy Defendants in this case.

417.    The pervasiveness of unlawful prescriptions permits the inference that the prescriptions were actually unauthorized and issued to the Pharmacy Defendants without the prescribers' knowledge or consent.

418.    For instance, non-party Arkam Rehman, M.D. ("Rehman") identified ASG in a sworn affidavit as billing for pharmacy services that he did not authorize.  *See* Exhibit 2.

419.    Rehman's sworn affidavit contains an example of an unsigned and unauthorized prescription under his name and credentials for esomeprazole and lidocaine 5% ointment that purportedly was transmitted to ASG; Rehman identified this prescription as fraudulent:



See Exhibit 2.

420.    ASG also billed Allstate for the same drugs in connection with claimant J.J. (claim no. 0579334038), which drugs were purportedly prescribed by Rehman on the exact same day (October 21, 2021) in the exact same manner using unsigned copies, which is similar to the ASG prescriptions identified by Rehman as fraudulent and unauthorized:



79

421.    ASG generated prescription orders under Rehman's credentials that were formatted to look like electronic prescription, but were actually unsigned "written" prescription.

422.    ASG generated the same types of prescription forms in connection with numerous other claims, including the following representative examples:

| Claimant | Date of Prescription | Prescribed Medication | Prescribing Provider |
|---|---|---|---|
| A.P. (claim no. 0597828532) | 8/19/2020 | Lidocaine 5% ointment | Jules François Parisien, M.D. |
| D.B. (claim no. 0603246174) | 10/22/2020 | Lidocaine 5% ointment; Celecoxib 200mg | Christian Bannerman, M.D. |
| S.H. (claim no. 0585465610) | 9/17/2020 | Lidocaine 5% ointment; Naproxen sodium 550mg | Gamil Kostandy, M.D. |
| R.L. (claim no. 0601849300) | 10/6/2020 | Lidocaine 5% ointment; Cyclobenzaprine 10mg; Ibuprofen 600mg | Muhammad Zakaria, M.D. |
| N.H. (claim no. 0586550204) | 8/27/2020 | Lidocaine 5% patches; Celecoxib 200mg | Hong Pak, M.D. |
| R.R. (claim no. 0588295724) | 9/17/2020 | Lidocaine 5% ointment; Naproxen sodium 550mg | Gamil Kostandy, M.D. |

423.    Briar also billed for unauthorized Topical Pain Products.

424.     For example, Briar billed for both lidocaine 5% ointment and lidocaine 5% patches prescribed to claimant A.G. (claim no. 0607470853), which were purportedly prescribed by Alleyne using a preprinted checklist:



425.     However, Alleyne stated in an affidavit that Metro Pain submitted altered prescription forms under his name without his permission to include additional Topical Pain Products, including lidocaine 5% patches.  *See* Exhibit 1.

426.   Alleyne "rarely, if ever, prescribed Lidocaine/Lidoderm 5% Patches and [he] would never simultaneously prescribe both Lidocaine 5% Ointment and Lidocaine/Lidoderm 5% Patches because doing so could cause various side effects including dizziness and a sudden decrease in blood pressure, and could result in overdosing the patient." *See* Exhibit 1.

427.   Galaxy's claims involved drugs that were prescribed using invalid and unsigned prescriptions forms that were faxed into the pharmacy rather than submitted electronically, which was against New York law.  *See* N.Y. Educ. Law § 6802(23) ("an *original hard copy* prescription that is created electronically or otherwise may be transmitted from the prescriber to the pharmacist by facsimile and *must be manually signed*") (emphasis added).

428.   For example, Galaxy's claims for claimant M.N. (claim no. 0618323000) involved several forms listing the credentials of non-party Kim, which were transmitted to Galaxy by facsimile:





**Galaxy Rx INC**
47-02 47th Ave.
Phone:    (718)786-8785    Fax:    (718)786-8760    3/23/2021    3:32:40PM

Rx#: 60676

| | |
|---|---|
| **Rx Pres:** STANLEY SANGWOOK KIM | **Ord Date**  03/18/2021 |
| 1894 EASTYCHESTER RD | **NPI#**  1902815087 |
| BRONX, NY 10461 | **LIC#:**  238366 |
| Phone: (347)657-0877    Fax: (347)657-0874 | **DEA#:** |
| | **SPI#** |

| | | |
|---|---|---|
| **Patient:** N     , M | | |
| **DOB** | **Gender** M | **Rx#:**  60676 |
| **Address:** | | |
| **Phone** | **Qty Ord:**  250.000 | 0 |
| **Qty:**  250.00    **Days:** 30    **Refills:** 0 | **PH/TH:**DS | **Class** |

**Drug:**    LIDOCAINE 5% OINT

**Sig:**    APPLY TO AFFECTED AREAS TWICE A DAY

_____    _____
Signature                                Date
This Prescription Will be Filled Generically Unless          N
Prescriber Writes "DAW" in the Box          Dispense As Written

429.    Galaxy's facsimile form is based on an illegal preprinted prescription form bearing

Kim's name:

## PRESCRIPTION ORDER FORM

THIS FACIMILE TRANSMISSION IS INTENDED TO BE DELIVERED TO THE
NAMED ADDRESSED AND MAY CONTAIN INFORMATION THAT IS
CONFIDENTIAL PRIVILEDGED AND PROPRIETARY OR EXEMPT FROM
DISCLOSURE UNDER APPLICABLE LAW, IF IT IS RECEIVED BY A NONE OTHER
THAN THE NAMED ADDRESSED, PLEASE CONTACT US AND DESTROY. ©2019

**LIDOCAINE OINTMENT 5%**
SIG: APPLY TO AFFECTED AREAS TWICE A DAY
DISP:    200    250 GRAMS
REFILLS:

**SUMATRIPTAN 50MG TABS**
(ONLY FOR HEADACHES)
SIG: TAKE 1 TABLET BY MOUTH ONCE AT ONSET
OF HEADACHE, MAY REPEAT ONE TABLET ONCE
AFTER 2 HOURS
DISP:    9    18
REFILLS:

**CHLORZOXAZONE 250MG TABLETS**
SIG:
DISP:    60    90    120
REFILLS:

**OMEPRAZOLE CAPSULES**
SIG:
STRENGTH:    70    40 MG
DISP:    30    60

**DIHYDROERGOTAMINE NASAL SPRAY 4MG/ML**
(ONLY FOR HEADACHES)
SIG: INSTILL 1 ACTUATION IN EACH NOSTRIL EVERY
15 MINUTES AT ONSET OF HEADACHE, MAY
REPEAT ONCE.
DISP:    8 ML

**Baclofen 20MG**
SIG:
DISP:    30    60    90
REFILLS:

**CYCLOBENZAPRINE 10MG TABLETS**
SIG:
DISP:    90    60    90
REFILLS:

**CELEBREX 200MG CAPSULES**
SIG:
DISP:    30    60    90
REFILLS:

**ZIPSOR 25MG CAPSULES (NSAID)**
SIG: TAKE 1 TABLET BY MOUTH FOUR TIMES PER DAY AS
DIRECTED.
DISP:    120 CAPSULES
REFILLS:

**OTHER**
SIG:
DISP:    30    60    90
REFILLS:

**PRESCRIBER INFORMATION**
NAME:    Stanley Sangwook Kim
ADDRESS:
CITY: Bronx    1894 Eastchester Road Suite #201    STATE: NY    ZIP: 10461
NPI#:
LIC#:    238366-1

**STATEMENT OF MEDICAL NECESSITY:**
SIDE EFFECTS ASSOCIATED WITH ORAL ADMINISTRATION CAN OFTEN BE AVOIDED WHEN MEDICATIONS ARE USED TOPICALLY. WHEN
MEDICATIONS ARE ADMINISTERED TOPICALLY, THEY ARE NOT ABSORBED THROUGH THE GASTROINTESTINAL SYSTEM AND DO NOT
UNDERGO FIRST PASS HEPATIC METABOLISM. TOPICAL CREAMS/PATCHES WILL BE USED IN CONJUNCTION WITH LOWER DOSES OF ORAL
MEDICATIONS TO PREVENT DEPENDENCE AND SIDE EFFECTS OF ORAL MEDICATIONS.

PHYSICIAN SIGNATURE:    DATE:    03-18-2021

430.    Many of Galaxy's claims involved telephone prescriptions, which were supported by these illegal preprinted forms.

431.    For instance, Galaxy's claim for claimant Y.T. (claim no. 0619618167) was supported by a telephone prescription issued under the name of non-party Ruben Oganesov, M.D. ("Oganesov"), which was supported by an illegal pre-printed prescription form bearing Oganesov's name and credentials:



432.    Notably, Oganesov has disclosed other instances where his name and signature were forged on various prescription and referral forms, which bears upon the validity of the lidocaine 5% ointment prescription for claimant Y.T.  *See* Exhibit 26.

433.    Below are further representative examples of unlawful prescriptions transmitted to Galaxy in violation of New York law:

| Claimant | Date of Prescription | Prescribed Medication | Prescribing Provider | Unlawful Method of Transmission |
|---|---|---|---|---|
| M.N. (claim no. 0618323000) | 3/18/2021 | Lidocaine 5% ointment; Naproxen 500mg | Stanley-Sangwook Kim, D.O. | Facsimile; preprinted form |
| Y.T. (claim no. 0619618167) | 6/26/2021 | Lidocaine 5% ointment | Ruben Oganesov, M.D. | Telephone; preprinted form |
| S.C. (claim no. 0622358471) | 5/6/2021 | Lidocaine 5% ointment; Naproxen 500mg | Ruben Oganesov, M.D. | Telephone; preprinted form |
| T.B. (claim no. 0623067667) | 4/22/201 | Celecoxib 200mg; Lidocaine 5% ointment | Ruben Oganesov, M.D. | Telephone; preprinted form |
| R.G. (claim no. 0623326675) | 4/23/2021 | Celecoxib 200mg; Lidocaine 5% ointment | Ruben Oganesov, M.D. | Telephone; preprinted form |
| D.R. (claim no. 021883114) | 5/17/2021 | Celecoxib 200mg; Lidocaine 5% ointment | Hong Pak, M.D. | Telephone |
| S.W. (claim no. 0609647457 | 4/30/2021 | Naproxen 500mg; Lidocaine 5% ointment | Ruben Oganesov, M.D. | Telephone; preprinted form |
| G.L. (claim no. 0623440567) | 4/15/2021 | Celecoxib 200mg; Lidocaine 5% ointment | Ruben Oganesov, M.D. | Telephone; preprinted form |

| Claimant | Date of Prescription | Prescribed Medication | Prescribing Provider | Unlawful Method of Transmission |
|---|---|---|---|---|
| J.B. (claim no. 0623067667) | 4/22/2021 | Celecoxib 200mg; Lidocaine 5% ointment | Ruben Oganesov, M.D. | Telephone; preprinted form |
| W.J. (claim no. 0623440567) | 4/15/2021 | Celecoxib 200mg; Lidocaine 5% ointment | Ruben Oganesov, M.D. | Telephone; preprinted form |
| A.W. (claim no. 0627330467) | 5/6/2021 | Naproxen 500mg; Lidocaine 5% ointment | Ruben Oganesov, M.D. | Telephone; preprinted form |
| K.M. (claim no. 0624202826) | 5/10/2021 | Naproxen 500mg; Lidocaine 5% ointment | Stanley-Sangwook Kim, D.O. | Telephone; preprinted form |

### D.    SPECIFIC EXAMPLES OF FRAUDULENT BILLING

#### 1.    Exemplar Claim—Claimant J.L. (claim no. 0640818456)

434.    Claimant J.L. was reportedly involved in a motor vehicle accident on September 9, 2021.

435.    On September 14, 2021, claimant J.L. was examined by non-party Kim at a clinic located at 153-01 Northern Boulevard in Flushing, NY.  Notably, the 153-01 Northern Boulevard clinic was the location of a No-Fault scheme that involved unlawful control of providers, bills for unnecessary treatment, and prescriptions for additional unnecessary services.  *See Allstate Ins. Co. v. 153 Plaza* LLC, No. 1:17-cv-05961 (E.D.N.Y.).

436.    Kim re-examined J.L. on October 19, 2021 for continued complaints of pain to the neck, shoulder, and lower back as well as the right knee.

437.    Using a pre-printed prescription form, Kim prescribed 300 grams of diclofenac sodium 3% gel to J.L, which was reflected by an illegal pre-printed order form:



438.    The prescription order form was issued October 19, 2021 and then steered to Briar. However, the diclofenac sodium 3% gel was not delivered to J.L. until 6 weeks later on December 1, 2021.  Even if the prescription was valid (it was not), the unexplained delay between the

prescription date and delivery date further underscores the lack of necessity for this Topical Pain Product.

439.    Diclofenac sodium 3% gel, which is FDA-approved for the topical treatment of a skin condition called actinic keratosis, was not effective to treat J.L.'s musculoskeletal pain because the drug is designed for minimal depth of absorption, which means the drug is meant to stay in the skin—useful for the treatment of actinic keratosis, but not for the treatment of J.L.'s purported injuries.

440.    Moreover, there is no indication in J.L.'s records that he was actually using the diclofenac sodium 3% gel.

441.    For instance, on December 21, 2021, J.L. was examined by another provider who did not report that J.L. was using diclofenac sodium 3% gel:



Current medication: Aspirin, Losartan, Metformin

442.    Briar billed Allstate $2,829.00 for 300 grams of diclofenac sodium 3% gel purportedly dispensed to J.L.

443.    Allstate is entitled to recover all payments made to Briar in connection with these services. To the extent that any of Briar's charges for the drugs for J.L. remain unpaid, Allstate has no further obligation to make payment because Briar's charges are not compensable under New York's No-Fault laws.

**2.    Exemplar Claim—S.T. (claim no. 0615130085)**

444.    Claimant S.T. was reportedly involved in a motor vehicle accident on February 10, 2021.

445.    On February 18, 2021, S.T. began treating at a clinic located at 3626 Bailey Ave in Bronx, NY.

446.    The clinic at 3626 Bailey Ave allegedly serves as a "convenient, one-stop shop[] for no-fault insurance fraud." *See Gov't Empls. Ins. Co., et al., v. Landa*, No. 24-cv-00050 (E.D.N.Y.); *Gov't Empls. Ins. Co., et al., v. Tenenbaum*, No. 22-cv-04543-ARR-RLM (E.D.N.Y.).

447.    S.T. was prescribed a number of medications at the initial visit, including celecoxib capsules, Nexium capsules, baclofen capsules, and lidocaine 5% ointment, which were dispensed by a different pharmacy.

448.    However, the records of S.T.'s subsequent treatment do not indicate whether S.T. used the lidocaine 5% ointment or experienced relief or side effects.

449.    Nonetheless, S.T. was given additional prescriptions for lidocaine 5% ointment and diclofenac sodium 3% gel, despite the lack of need.  The prescriptions were issued by non-party Scott Lyons, PA ("Lyons"), who has been accused of prescribing medically unnecessary Topical Pain Products, including lidocaine 5% ointment and diclofenac sodium 3% gel, to patients of the 3626 Bailey Ave clinic. *See Gov't Empls. Ins. Co. v. S&N NYC, Inc.*, No. 22-cv-07830 (E.D.N.Y.).

450.    Lyons' prescriptions for medically unnecessary lidocaine 5% ointment and diclofenac sodium 3% gel were transmitted to Galaxy.

451.    Galaxy billed Allstate the diclofenac sodium 3% gel in the amount of $1,137.00, but did not dispense or bill for the lidocaine 5% ointment.

452.    S.T. was examined again at the 3626 Bailey Ave clinic on June 23, 2021. This exam was conducted by a different doctor, who did not discuss—or even reference—the use or effectiveness of the previously prescribed diclofenac sodium 3% gel.

453. S.T. was prescribed lidocaine 5% ointment during the June 23 exam. The prescription was steered to S&N, which billed Allstate in the amount of $1,900.00 for the lidocaine 5% ointment.

454. Neither the diclofenac sodium 3% gel nor lidocaine 5% ointment was necessary or effective to treat S.T.'s complaints of musculoskeletal pain; rather, the drugs were prescribed because of predetermined protocols and unlawful referral arrangements; indeed, S&N was implicated in a scheme involving unnecessary prescriptions issued by providers at the 3626 Bailey Ave clinic.

455. Allstate paid Galaxy $915.82 for the medically unnecessary diclofenac sodium 3% gel prescribed by Lyons to S.T.

456. Allstate paid S&N $1,528.72 for the medically unnecessary lidocaine 5% ointment prescribed by non-party Clifton Burt, M.D. to S.T.

457. Allstate is entitled to recover all payments made to Galaxy and S&N in connection with these services. To the extent that any of Galaxy and S&N's charges for the drugs for S.T. remain unpaid, Allstate has no further obligation to make payment because Galaxy and S&N's charges are not compensable under New York's No-Fault laws.

### 3. Exemplar Claim—Claimant C.L. (claim no. 0620980706)

458. Claimant C.L. was reportedly involved in a motor vehicle accident on March 31, 2021.

459. Afterwards, C.L. began treating at a clinic located at 2386 Jerome Ave in Bronx, NY.

460. Notably, the 2386 Jerome Ave clinic is implicated in a scheme involving unlicensed laypersons who dictated patient treatment, including the prescription of drugs for all patients; as

alleged, the prescriptions were steered to certain pharmacies, including 167 Rx. *See Gov't Empls. Ins. Co. v. Fill Rx NY Inc.*, No. 24-cv-01844 (E.D.N.Y.).

461.    C.L.'s exam at the 2386 Jerome Ave clinic on December 8, 2021 resulted in prescriptions for Tylenol, baclofen, and lidocaine 5% ointment, which were steered to 167 Rx.

462.    Notably, C.L. was also prescribed diclofenac sodium 3% gel during the December 8, 2021 exam, but that prescription was steered to a different pharmacy (i.e., non-party Ready Rx LLC), which also has a history of involvement in No-Fault fraud schemes. *See Gov't Empls. Ins. Co. v. Ready Rx LLC*, No. 1:21-cv-04765 (E.D.N.Y.); *Allstate Ins. Co. v. Atlas Pharmacy, LLC*, No. 22-cv-03817 (E.D.N.Y.); *LM General Ins. Co. v. Atlas Pharmacy LLC*, No. 1:25-cv-01373 (E.D.N.Y.).

463.    Even though C.L. was prescribed lidocaine 5% ointment, Tylenol, and cyclobenzaprine by the same provider during a prior exam on October 13, 2021, the records of C.L.'s December 8, 2021 exam did not discuss the use or effectiveness of these drugs, including the lidocaine 5% ointment; instead, the prescriptions were simply refilled as part of a predetermined protocol.

464.    For C.L., the lidocaine 5% ointment was unnecessary for treating musculoskeletal pain because the lidocaine ointment is a topical anesthetic intended to treat minor burns, bites, and abrasions; it was also ineffective because the drug does not sufficiently penetrate intact skin, meaning that it did not work against C.L.'s reported conditions.

465.    Allstate made payments to 167 Rx totaling $1,645.93 for the medically unnecessary drugs prescribed to C.L.

466.    Allstate is entitled to recover all payments made to 167 Rx in connection with these services. To the extent that any of 167 Rx's charges for the drugs for C.L. remain unpaid, Allstate

has no further obligation to make payment because 167 Rx's charges are not compensable under New York's No-Fault laws.

### 4.    Exemplar Claim—Claimant T.T. (claim no. 0563736602)

467.    Claimant T.T. was reportedly involved in a motor vehicle accident on September 12, 2019.

468.    On June 15, 2020, T.T. was evaluated by a provider working for non-party Macintosh Medical at a clinic located at 3910 Church Ave in Brooklyn, NY.

469.    Notably, both the 3910 Church Ave clinic and Macintosh Medical are implicated in criminal activity.  The 3910 Church Ave clinic was the subject of an undercover investigation and eventual raid by law enforcement.

470.    The investigation produced evidence of illegal operation and predetermined protocols, which included drug prescriptions for all patients.

471.    The 3910 Church Ave clinic has also been implicated in other actions as the host of fraudulent No-Fault providers, including Macintosh Medical. *See Gov't Empls. Ins. Co., et al., v. Park Chemists 4 AC LLC*, No. 1:23-cv-09168  (E.D.N.Y.).

472.    Macintosh Medical itself has been accused of submitting false and fraudulent claims "as part of a massive scheme to exploit New York's no-fault insurance system." *Gov't Empls. Ins. Co.  v. Landow*, No. 1:21-cv-01440 (E.D.N.Y.); *Allstate Ins. Co. v. Landow*, No. 1:24-cv-02010 (E.D.N.Y.).

473.    According to the initial examination report, claimant T.T. was immediately prescribed lidocaine 5% ointment, as well as cyclobenzaprine 10mg.

474.    Esmeralda billed Allstate a total of $1,556.70 for the medically unnecessary drugs purportedly dispensed to T.T.

475.    The drugs were not necessary in this case because they were prescribed pursuant to predetermined protocols and unlawful referral arrangements.  The lidocaine 5% ointment was also clinically ineffective for treating T.T.'s reported conditions because the drug is not capable of penetrating skin to the depth necessary for treating pain in deeper joints, such as the back and shoulder.

476.    Accordingly, Esmeralda was not eligible to collect No-Fault payments, and Allstate is entitled to recover payments made to Esmeralda in connection with T.T.  Allstate is also not obligated to pay any unpaid No-Fault claims submitted by Esmeralda in connection with T.T.

**5.    Exemplar Claim—Claimant A.A. (claim no. 0721712073)**

477.    Claimant A.A. was reportedly involved in an accident on July 9, 2023.

478.    On July 25, 2023, A.A. was examined by non-party Jean-Pierre Georges Barakat, M.D. ("Barakat"), who was working through non-party Far Rockaway Medical, P.C. ("Far Rockaway") at a clinic located at 62-69 99th Street in Rego Park, NY.

479.    Notably, Barakat has been accused of issuing fraudulent prescriptions and engaging in unlawful referral arrangements through Far Rockaway and other entities.  *See Gov't Empls. Ins. Co. v. Barakat*, No. 1:22-cv-07532 (E.D.N.Y.) (alleging that Barakat engaged in an illegal kickback scheme through Far Rockaway); *Gov't Empls. Ins. Co., et al., v. JP Rx Corp.*, No. 1:22-cv-01248 (E.D.N.Y.) (alleging that Barakat prescribed medically unnecessary lidocaine 5% ointment to patients of Far Rockaway pursuant to a predetermined protocol as part of a No-Fault scheme to defraud).

480.    Here, Barakat purportedly prescribed Lidothol Patches and diclofenac potassium 25mg capsules to A.A. as part of the initial examination, even though such prescriptions are not documented in the examination report.

481.    The drugs were not necessary in this case because they were prescribed pursuant to predetermined protocols and unlawful referral arrangements.  The Lidocaine Patches were also clinically ineffective for treating A.A.'s reported conditions because the drug is not capable of penetrating skin to the depth necessary for treating pain in deeper joints, such as the neck, knee, and shoulder.

482.    Barakat also purportedly prescribed lidocaine 5% ointment to A.A. during the initial examination, but the prescription was steered to a different pharmacy than Cypress, which was reckless because prescribing Lidothol patches and lidocaine 5% ointment at the same time placed A.A. at risk for lidocaine toxicity, and also prevented A.A. from obtaining appropriate counseling due to the splitting of prescriptions between two (2) different pharmacies.

483.    Barakat reportedly examined A.A. again on September 12, 2023, but the examination report did not indicate lidocaine or diclofenac as prior medications, nor did the report indicate whether A.A. experienced any relief or side effects from the prior prescriptions for Lidothol patches, diclofenac potassium capsules, or lidocaine 5% ointment.

484.    Nonetheless, Barakat reportedly issued new prescriptions for Lidothol Patches and diclofenac potassium 25mg capsules, but the prescriptions are not indicated in A.A's. examination report.

485.    Allstate made payments to Cypress totaling $1,846.10 for the medically unnecessary drugs prescribed to A.A.

486.    Cypress was not eligible to collect No-Fault payments because the drugs were medically unnecessary and ineffective, and because they were prescribed pursuant to predetermined protocols and unlawful referral arrangements.

487.    Allstate is therefore entitled to recover No-Fault payments made to Cypress in connection with A.A.  Allstate is also not obligated to pay any unpaid No-Fault claims submitted by Cypress in connection with A.A.

### 6.    Exemplar Claim—Claimant R.C. (claim no. 062804956)

488.    Claimant R.C. was reportedly involved in a car accident on May 28, 2021.

489.    Thereafter, R.C. began treating at a clinic located at 3407 White Plains Road in Bronx, NY, which has been linked to a scheme that involves an unlawful referral network.  *Allstate Inc. Co. v. Landow*, No. 1:24-cv-02010 (E.D.N.Y.).

490.    On July 19, 2021, R.C. was examined by non-party Clifton Burt, M.D. ("Burt") who was working through Macintosh Medical at the 3407 White Plains Road clinic.  Notably, Burt has his own history of involvement in other No-Fault fraud schemes centered around fraudulent prescriptions for medications and medical equipment. *See Gov't Empls. Ins. Co. v. Yanni,* No. 20-cv-02515 (D.N.J.); *Gov't Empls. Ins. Co. v. Physical Therapy & Herniated Disc Center, L.L.C.*, No. 20-cv-05139 (D.N.J.); *Gov't Empls. Ins. Co. v. Brunswick Health PC*, No. 22-cv-06496 (D.N.J.); *Allstate Ins. Co. v. Spina*, No. 20-cv-01959 (S.D.N.Y.).

491.    Burt purportedly prescribed lidocaine 5% ointment, cyclobenzaprine 7.5mg tablets, and baclofen 20mg tablets to R.C. as part of the July 19, 2021 examination.  The next day, on July 20, 2021, Burt purportedly prescribed diclofenac sodium 3% gel to R.C.  Each of R.C.'s prescriptions were steered to S&N.

492.    R.C. was later re-examined by a different provider working through Macintosh Medical on August 26, 2021; however, the report of R.C.'s examination does not indicate the prior prescriptions purportedly issued by Burt, nor does the report indicate whether R.C. experienced any relief or side effects from using the drugs.

493.    Overall, Allstate paid S&N $2,715.39 for the medically unnecessary drugs prescribed to R.C.

494.    S&N was not eligible to collect No-Fault payments because the drugs were medically unnecessary and ineffective, and because the prescriptions were issued and steered to S&N pursuant to predetermined protocols and unlawful referral arrangements.

495.    Allstate is therefore entitled to recover No-Fault payments made to S&N in connection with R.C.  Allstate is also not obligated to pay any unpaid No-Fault claims submitted by S&N in connection with R.C.

### 7.    Exemplar Claim—Claimant D.C. (claim no. 0697192805)

496.    Claimant D.C. was reportedly involved in an accident on December 26, 2022.

497.    A few days later on December 29, 2022, D.C. was examined by non-party Kyungsook Bu, NP ("Bu") at a clinic located at 540 E. Fordham Road, 2B in Bronx, NY.  Notably, the clinic at 540 E. Fordham Road is implicated in a scheme involving several clinics and medical providers, which are operated and controlled in violation of New York law.  *See LM Ins. Co. v. Adam*, No. 24-cv-04153 (E.D.N.Y.).  As alleged, the clinics play host to numerous providers that bill for medically unnecessary services and issue unnecessary drug prescriptions.  Bu is also linked to other No-Fault fraud schemes involving fraudulent prescriptions for medications and medical equipment, including at the clinic located at 540 E. Fordham Road. *See Gov't Empls. Ins. Co., et al., v. Binns*, No. 22-cv-01553 (E.D.N.Y.); *Allstate Ins. Co. v. Volfi Inc. d/b/a S & K Pharmacy*, No. 24-cv-06620 (E.D.N.Y.).

498.    Bu purportedly prescribed several drugs for D.C. in connection with the initial examination, namely lidocaine 5% ointment, diclofenac sodium 3% gel, cyclobenzaprine 7.5mg tablets, and Celebrex 200mg.

499.    D.C.'s prescriptions were indicated in a pre-printed list of drugs, which was circled as part of a predetermined treatment protocol:



500.    However, no drugs were actually dispensed to D.C. following the initial examination at the 540 E. Fordham Road clinic.

501.    D.C. was purportedly re-evaluated by Bu on January 31, 2023 during an office visit at the 540 E. Fordham Road clinic.    According to Bu's report, D.C. underwent trigger point injections, but no drug prescriptions were indicated.

502.    After D.C.'s January 31, 2023 visit, a prescription for lidocaine 5% ointment was steered to Better Soon, while prescriptions for diclofenac sodium 3% gel, cyclobenzaprine 7.5mg tablets, and Celebrex 200mg were steered to different pharmacy—non-party S & K Warbasse Pharmacy Inc, which has also been accused of engaging in a scheme to collect No-Fault payments for unnecessary drugs, including lidocaine 5% ointment, which were prescribed because of

predetermined treatment protocols and unlawful referral arrangements. *See Allstate Ins. Co. v. SMK Pharmacy, Corp.*, No. 24-cv-04627 (E.D.N.Y.).

503.    Submitting D.C.'s prescriptions to different pharmacies made no sense, other than to (a) conceal the nature and number of drugs actually prescribed to the claimant, (b) maintain multiple unlawful referral relationships, and (c) reduce the chances of the prescriptions being declined or the pharmacies' claims being denied.

504.    The fraudulent nature of the prescriptions is further underscored by the unexplained delay between the initial examination (December 29, 2022) and when the drugs were supposedly delivered (February 7, 2023); indeed, if the drugs were truly necessary (they were not), then they should have been delivered immediately after the exam, not over 40 days later.

505.    In this case, the lidocaine 5% ointment was not necessary because it was prescribed according to predetermined protocols and unlawful referral arrangements.  The lidocaine 5% ointment was also clinically ineffective for treating D.C.'s reported conditions because the drug cannot penetrate the skin deep enough to treat the neck, back, knee, thigh, and shoulder pain reportedly suffered by D.C.

506.    Moreover, the reports submitted by D.C.'s other medical providers raises serious doubts whether Better Soon actually delivered lidocaine 5% ointment to D.C.  For example, D.C.'s use of prescription drugs, namely lidocaine 5% ointment, is not indicated in the reports from other providers that evaluated D.C. during the same period:

NAME: C&#9608;&#9608;&#9608;&#9608;, D&#9608;&#9608;
DOB: &#9608;&#9608;&#9608;&#9608;
DOA: 12/26/2022
DATE: 02/22/2023

Pain is increased by extension and lateral rotation, exertion, prolonged sitting, bending, fatigue, lifting, pulling, prolonged standing and walking.

ALLEVIATING FACTORS:
Pain is decreased occasionally by bed rest, sitting and sometimes by standing and walking and occasional nonsteroidal anti-inflammatory medication.

ASSOCIATED SYMPTOMS:
There is a minor associated upper left extremity weakness. The patient has pain at night but denies any fever, chills, night sweats, weight loss, and bowel or bladder incontinence.

**Treatments tried/Effect:**
Medications other than NSAIDS: not tried

***

## Past Medical History:
The patient denies any significant Medical / Surgical / Trauma History.
Surgical History: _____C Section_____
Trauma History: _____PMVA 2015_____
Medical History: _____∅_____
Allergies: Yes /(No)

PACEMAKER: ___✓___ Denied _____ YES

PREGNANT: ___✓___ Denied _____ YES

CURRENT MEDICATIONS: _____

None. Tylenols/ Motrin/ Ibuprofen/ Naprosyn/ Aspirin/ Flexeril/ other

507.    Allstate made No-Fault payments to Better Soon in the amount of $2,715.39 in connection with the unnecessary lidocaine 5% ointment prescribed to D.C.

508.    Better Soon was not eligible to collect No-Fault payments because the drugs were medically unnecessary and ineffective, and because the prescriptions were issued and steered to Better Soon pursuant to predetermined protocols and unlawful referral arrangements.

100

509. Allstate is therefore entitled to recover No-Fault payments made to Better Soon in connection with D.C.  Allstate is also not obligated to pay any unpaid No-Fault claims submitted by Better Soon in connection with D.C.

**8.    Exemplar Claim—Claimant J.M. (claim no. 0593154255)**

510. Claimant J.M. was reportedly involved in an accident on July 15, 2020.

511. On September 28, 2020, J.M. underwent a consultation for manipulation under anesthesia.

512. Thereafter, a prescription for diclofenac sodium 3% gel was issued for J.M., which was steered to ASG through an unsigned prescription:



513. Notably, the report of J.M.'s evaluation does not indicate any prescriptions. Moreover, an exam report from another provided dated October 19, 2020 indicated that J.M. was not taking any medications:

**Treatment received:** _____

Pain on the day was _____ ~~1-0~~ on a 0-10 scale.

At present, the patient's worst pain is in the _____ 4 _____
Pain is ___constant ___intermittent.
Pain is ___ burning ___ stabbing ___ sharp ___ dull ___ aching _____
Pain is aggravated by: ___lifting ___reaching ___bending ___walking ___sitting ___pulling
___stairs ___driving ___writing ___typing ___moving
Patient is R/L handed.

Past Medical History: ___None _____ *mm Tlbrcds*
Past Surgical History: ___None _____
Medications: ___None _____ *hw choles med*

514.    Accordingly, there is serious doubt whether the prescription was validly issued, and whether the diclofenac sodium 3% gel was actually delivered to J.M.

515.    However, even if the diclofenac sodium 3% gel was actually delivered, the drug was still unnecessary to treat J.M.'s reported complaints of musculoskeletal pain.

516.    Allstate made No-Fault payments to ASG in the amount of $1,892.14 in connection with the diclofenac sodium 3% gel that was billed for in connection with J.M.

517.    ASG was not eligible to collect No-Fault payments in connection with J.M. because the drugs were medically unnecessary and ineffective, and because the prescriptions were issued and steered to ASG pursuant to predetermined protocols and unlawful referral arrangements.

518.    Allstate is therefore entitled to recover No-Fault payments made to ASG in connection with J.M.  Allstate is also not obligated to pay any unpaid No-Fault claims submitted by ASG in connection with J.M.

**9.    Exemplar Claim—Claimant M.E. (claim no. 0694523846)**

519.    Claimant M.E. was reportedly involved in an accident on December 4, 2022.

520.    Just 2 days later on December 6, 2022, M.E. underwent an initial examination at the 540 E. Fordham Road clinic, whose links to other No-Fault fraud schemes is detailed above. The examination was conducted by non-party Paul Katushia NP ("Katushia"), who was working for non-party Raia Medical Services P.C. ("Raia Medical") at the clinic.

521.    Katushia prescribed diclofenac sodium 3% gel, celecoxib, and lidocaine 5% ointment to M.E., according to the examination report.  Notably, the drugs were selected from a predetermined checklist contained in the examination report template:



522.    M.E.'s prescriptions were also reflected on an unlawful preprinted order form, in which a fourth drug (cyclobenzaprine) was added to the order even though it was not indicated in M.E.'s examination report:

523. On December 18, 2022, Story Ave billed for the reported delivery of diclofenac sodium 3% gel, celecoxib, lidocaine 5% ointment, and cyclobenzaprine to M.E.

524. However, Story Ave's bills were supported by prescriptions issued by a different provider at the 540 E. Fordham Road clinic, non-party Bu, who was also working for Raia Medical:



525.    Story Ave's bills for M.E. are fraudulent because Bu never examined M.E. on December 15, 2022.

526.    In fact, M.E. was never examined by Bu until January 10, 2023.  Notably, the report of M.E.'s January 10, 2023 examination does not indicate that M.E. was taking prescription drugs at the time of the examination even though Bu reportedly prescribed drugs to M.E. in December 2022.

527.    Allstate made No-Fault payments to Story Ave in the amount of $2,360.00 in connection with the diclofenac sodium 3% gel that was billed for in connection with M.E.

528.    Story Ave was not eligible to collect No-Fault payments in connection with M.E. because the prescriptions were fraudulent, the drugs were medically unnecessary and ineffective, and the prescriptions were steered to Story Ave pursuant to predetermined protocols and unlawful referral arrangements.

529.    Allstate is therefore entitled to recover No-Fault payments made to Story Ave in connection with M.E.  Allstate is also not obligated to pay any unpaid No-Fault claims submitted by Story Ave in connection with M.E.

530.    M.E. continued treating at the 540 E. Fordham Road clinic after the January 10, 2023 visit with Bu, which resulted in prescriptions for diclofenac sodium 3% gel, cyclobenzaprine, and celecoxib.   These prescriptions were sent to a different pharmacy, non-party S & K Warbasse Pharmacy, Inc., which has also been implicated in No-Fault fraud schemes.  *See Allstate Ins. Co. v. SMK Pharmacy, Corp.*, No. 24-cv-04627 (E.D.N.Y.).

531.    There are serious doubts whether prescription drugs were ever delivered to M.E. because a February 1, 2023 report from another provider indicates that M.E. was not taking any daily medications:

**Daily Medications:** None.

532.    M.E. was examined again by Bu on February 7, 2023 at the 540 E. Fordham Road clinic.  This time, Bu was working for a different provider, non-party Medelstar Medical Services, which has been accused of providing unlawful referrals for unnecessary prescription drugs at the 540 E. Fordham Road clinic. *See LM Ins. Co. v. Adam*, No. 24-cv-04153-EK-MMH (E.D.N.Y.).

533.    Even though Bu had previously prescribed drugs for M.E. while working for Raia Medical at the 540 E. Fordham Road clinic, Bu's February 7, 2023 examination report indicated that M.E. was only taking metformin, which is a diabetes medication:



534.    Bu again prescribed M.E. with more lidocaine 5% ointment on February 8, 2023, and the prescription was steered to Better Soon.  Notably, Bu prescribed the lidocaine 5% ointment again without indicating whether M.E. experienced any relief or side effects from the drug.  In this case, the lidocaine 5% ointment was unnecessary to treat M.E.'s reported complaints of musculoskeletal pain.

535.    Better Soon billed Allstate $1,902.50 for the lidocaine 5% ointment purportedly dispensed to M.E.

536.    Allstate made No-Fault payments to Better Soon in the amount of $1,902.50 in connection with the lidocaine 5% ointment that was billed for in connection with M.E.

537.    Better Soon was not eligible to collect No-Fault payments in connection with M.E. because the lidocaine 5% ointment was medically unnecessary and ineffective, and because the prescription was steered to Better Soon pursuant to predetermined protocols and unlawful referral arrangements.

538.    Allstate is therefore entitled to recover No-Fault payments made to Better Soon in connection with M.E.  Allstate is also not obligated to pay any unpaid No-Fault claims submitted by Better Soon in connection with M.E.

**10.    Exemplar Claim—Claimant K.G. (claim no. 0734744971)**

539.    Claimant K.G. was reportedly involved in an accident on November 2, 2023.

540.    On November 10, 2023, K.G. began treating with non-party Joseph Martone, PA ("Martone") at a located at 480 East Jericho Turnpike in Huntington Station, NY.

541.    Notably, Martone was recently implicated in a different fraud action, in which he was accused of prescribing medically unnecessary Topical Pain Products through "fraudulent and collusive arrangements." *Gov't Empls. Ins. Co. v. Fill Rx NY Inc.*, No. 1:24-cv-01844 (E.D.N.Y.). The 480 East Jericho Turnpike clinic has also been identified as a "'one-stop shop[]' for no-fault insurance fraud." *Gov't Empls. Ins. Co. v. Apple Chiropractic of NY, P.C.*, No. 1:23-cv-05075 (E.D.N.Y.).

542.    Here, Martone was working for non-party Atlantic Medical & Diagnostic P.C., which itself has been accused of participating in a scheme centered around illegal PC control and a predetermined protocol of unnecessary tests, treatments, and prescriptions. *Allstate Ins. Co. v. Landow*, No. 24-cv-02010  (E.D.N.Y.).

543.    At the initial visit, Martone prescribed K.G. with Lidothol patches, naproxen-esomeprazole, tizanidine, and diclofenac sodium 3% gel. These drugs were not medically necessary because they are not first-line treatments, yet they were prescribed before K.G. underwent any treatment. The Lidothol patches and diclofenac sodium 3% gel were also unnecessary because they were incapable of treating K.G.'s reported conditions.

544.    Family Care billed Allstate $8,063.10 for the Lidothol patches, naproxen-esomeprazole, tizanidine, and diclofenac sodium 3% gel in connection with K.G.

545.    Martone re-examined K.G. again on December 11, 2023 at the 480 East Jericho Turnpike clinic, and again prescribed Lidothol patches, naproxen-esomeprazole, tizanidine, and diclofenac sodium 3% gel to K.G. even though the examination report does not indicate whether K.G. experienced any relief or suffered any side-effects from these drugs.

546.    K.G.'s prescriptions were steered to Family Care:

**FAMILY CARE PHARMACY OF LI INC**
33 Walt Whitman Rd Suite 100        Huntington Station, NY 11746
Phone: (631)350-6400   Fax: (631)350-6411        12/12/2023  2:59:56PM

| Rx Pres: Joseph Martone (PA-C) | Ord. Date 12/1/2023 |
|---|---|
| 480 East Jericho Tpk | NPI# 1447847926 |
| | LIC#: |
| Huntington Station, NY 11746 | DEA#: MM6374502 |
| Phone: (631)424-0020   Fax: (631)425-0020 | SPI# 9959713651106 |

Patient: G█████ K█
DOB █████    Gender █
Address: ██████
Rx#: 534898

Phone █████
Qty:   30.00   Days: 30   Refills: 0        PH/TH:SL        Class: 0
Potency UnitCd: Tablet
Drug: tizanidine 4 mg oral tablet

Sig: 1 Tablet One Hour Before Bedtime PRN

_____        _____
Signature                Date

This Prescription Will be Filled Generically Unless
Prescriber Writes "DAW" in the Box        N
Dispense As Written

---

**FAMILY CARE PHARMACY OF LI INC**
33 Walt Whitman Rd Suite 100        Huntington Station, NY 11746
Phone: (631)350-6400   Fax: (631)350-6411        12/12/2023  2:59:56PM

| Rx Pres: Joseph Martone (PA-C) | Ord. Date 12/11/2023 |
|---|---|
| 480 East Jericho Tpk | NPI# 1447847926 |
| | LIC#: |
| Huntington Station, NY 11746 | DEA#: MM6374502 |
| Phone: (631)424-0020   Fax: (631)425-0020 | SPI# 9959713651106 |

Patient: G█████ K█
DOB █████    Gender: █
Address: ██████
Rx#: 534895

Phone █████
Qty:   200.00   Days: 30   Refills: 0        PH/TH:SL        Class: 0
Potency UnitCd: Gram
Drug:  diclofenac sodium 3 % topical gel

Sig: 2-3x per day to affected area as needed for pain

_____        _____
Signature                Date

This Prescription Will be Filled Generically Unless
Prescriber Writes "DAW" in the Box        N
Dispense As Written

12/12/2023  11:50 PM    MessageType:  New Prescription

547.    However, the bills for these drugs were submitted by 33 Rx Inc., which is the
successor to Family Care:

51/42

NEW YORK MOTOR VEHICLE NO-FAULT INSURANCE LAW
VERIFICATION OF TREATMENT BY ATTENDING PHYSICIAN OR OTHER PROVIDER OF HEALTH SERVICE
(This form is not for verification of hospital treatment)

| NAME AND ADDRESS OF INSURER OR SELF-INSURER | NAME, ADDRESS, AND PHONE NUMBER OF INSURER'S CLAIMS REPRESENTATIVE |
|---|---|
| Allstate Ins. Co. PO BOX 2874 CLINTONIA 52733 | |

| DATE | POLICYHOLDER | POLICY NUMBER | ACCIDENT DATE | CLAIM NUMBER |
|---|---|---|---|---|
| 01/09/2024 | K████ G█████ | | 11/02/2023 | 0734744971 |

PROVIDER'S NAME AND ADDRESS
33 rx inc/ DBA family care pharmacy
33 walt Whitman rd suite 100
huntington station, NY 11746-0000
Phone:6313506400 Fax:6313506411

KINDLY COMPLETE AND SUBMIT THIS FORM AS SOON AS POSSIBLE. PLEASE NOTE, THIS COMPLETED FORM
MUST BE SUBMITTED TO THE INSURER AS SOON AS REASONABLY POSSIBLE BUT NO LATER THAN 45
DAYS OR 180 DAYS AFTER THE TREATMENT DATE, DEPENDING UPON THE POLICY ENDORSEMENT IN EFFECT AT THE
TIME OF THE ACCIDENT.
IF YOU ARE UNSURE OF THE APPLICABLE TIME REQUIREMENT, KINDLY CONTACT THE CLAIMS REPRESENTATIVE TO
DETERMINE WHICH DEADLINE IS APPLICABLE TO THIS CLAIM

IF YOU HAVE PREVIOUSLY SUBMITTED AN EARLIER REPORT ON THIS ACCIDENT, YOU NEED ONLY NOTE ANY CHANGES FROM
THE INFORMATION PREVIOUSLY FURNISHED AND ADDITIONAL CHARGES.

| 1. PATIENT'S NAME | PATIENT'S ADDRESS | | |
|---|---|---|---|
| K████ G█████ | | | |
| 2. DATE OF BIRTH | 3. SEX | 4. OCCUPATION(IF KNOWN) | |
| ████ | █ | | |
| 5.DIAGNOSIS AND CONCURRENT CONDITIONS | | | |

548.    33 Rx Inc. billed Allstate a total of $8,063.10 for these drugs in connection with K.G. even though 33 Rx Inc. was not legally registered to operate in New York at the time—33 Rx Inc. did not become a registered pharmacy in New York until February 21, 2024.

549.    There are also serious doubts whether K.G. took—or even received—the drugs because reports issued by K.G.'s other medical providers only listed "pain medication" as current medications.  Upon information and belief, the notations concerning K.G.'s current medications actually referred to a different set of drugs prescribed to K.G. during the same period in connection with a surgery, namely Percocet (a narcotic) and celecoxib (an NSAID).

550.    Even if the drugs were actually furnished to K.G., the prescriptions are still fraudulent because they were issued as part of a predetermined protocol, and not because of K.G.'s actual medical needs.

551.    Allstate made No-Fault payments to Family Care in the amount of $5,369.65 in connection with K.G.

552.    Family Care was not eligible to collect No-Fault payments in connection with K.G. because the drugs were not medically necessary or effective, and because the prescription was steered to Family Care pursuant to predetermined protocols and unlawful referral arrangements.

553.    Allstate is therefore entitled to recover No-Fault payments made to Family Care in connection with K.G.  Allstate is also not obligated to pay any unpaid No-Fault claims submitted by Family Care in connection with K.G.  Likewise, Allstate is not obligated to pay any unpaid No-Fault claims submitted by Family Care's successor 33 Rx Inc. because the pharmacy was not lawfully registered to operate in New York on the alleged date of service.

## VI.    SPECIFIC ALLEGATIONS OF RACKETEERING ACTIVITY

### A.    MAIL FRAUD

554.    Each Defendant (a) created, prepared, and submitted (or caused to be created, prepared, and submitted) false No-Fault claim reimbursement documentation, (b) intentionally violated the laws of the United States by devising and intending to devise, schemes to defraud and obtain money and property using false and fraudulent pretenses and representations, and (c) placed, or caused to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) to execute, or attempt, such fraudulent schemes.

555.    Unless otherwise pled to the contrary, all documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, letters of medical necessity, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and requests for payment in connection with the insurance claims referenced throughout this pleading (and accompanying exhibits) traveled through the U.S. Mail.

556.    Every automobile insurance claim detailed within this Complaint involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claim-related payments, and the return of the canceled payment instruments to the financial institution(s) from which the draft(s) were drawn.

557.    As detailed in the Counts below, the Defendants either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme, or acted with knowledge that the U.S. Mail would be used in the ordinary course of business.

558.    The Defendants caused the Pharmacy Defendants to misrepresent or omit material facts about their reimbursement eligibility each time that a No-Fault claim was mailed to Allstate.

559. As detailed in the Counts below, the Defendants knew that the Pharmacy Defendants (including their employees, owner(s), contractors, and agents), a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent No-Fault claims, including issuing payments based upon the documentation mailed by (or on behalf of) the Pharmacy Defendants.

560. Allstate estimates that hundreds of documents were faxed or mailed using the U.S. Mail during the course of this scheme. Examples of mailings made in furtherance of the Pharmacy Defendant enterprises are annexed at Exhibits 27-36 and incorporated herein by reference.

## B.   MONEY LAUNDERING

561. At all relevant times, the Defendants engaged in the illegal laundering of monetary instruments in violation of 18 U.S.C. § 1956.

562. The Defendants conducted numerous transactions in which the proceeds of the Pharmacy Defendants' No-Fault claims were transferred to the Shell Company Defendants. Each transaction was a sham because no legitimate goods or services were exchanged between the parties; instead, the payments were made as part of an effort to conceal the nature and ownership of the proceeds of the scheme.

563. The Shell Company Defendants then transferred the proceeds to the Dealers through structured transactions disguised as purchases of gold, watches, bulk jewelry, and other luxury items. Even if the transactions were not phony, there are still no legitimate business reasons for the sheer quantity of gold and jewelry purchased for the Pharmacy Defendants. Rather, the transactions were designed to (a) promote the Defendants' scheme, (b) conceal the nature and ownership of the proceeds, and (c) evade transaction and tax reporting requirements.

564.    To date, Allstate has discovered over $3,775,000.00 in payments from the Pharmacy Defendants to the Shell Company Defendants in connection with this scheme.  *See* Exhibits 8-10.

565.    Accordingly, the Defendants committed numerous violations of 18 U.S.C. § 1956 in furtherance of this scheme.

## VII.    SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MATERIAL MISREPRESENTATIONS MADE TO AND RELIED UPON BY ALLSTATE

566.    At all relevant times, Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, and Gukasyan purposely caused Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG to falsely certify that the respective pharmacies were eligible to be reimbursed under New York's No-Fault Laws to induce Allstate to promptly pay the bills submitted by Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG.

567.    At all relevant times, Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, and Gukasyan directly participated in the operation and management of Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG; their participation included, but was not limited to, efforts to conceal the lack of medical necessity for the drugs that were billed for by Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG.

568.    Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG were caused to falsely claim eligibility for No-Fault reimbursement each and every

time they sought No-Fault reimbursement from Allstate. At all relevant times, Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, and Gukasyan were responsible for Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG's submission of fraudulent claims and other misconduct, namely (a) billing for medically unnecessary and ineffective drugs, (b) billing for non-prescription drugs not covered under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) operating in violation of applicable New York laws and licensing requirements, and (e) maintaining unlawful referral arrangements with other No-Fault providers and clinics. All of this misconduct is unlawful, and it rendered each of the Pharmacy Defendants' claims non-compensable under New York's No-Fault laws.

569. The Defendants' scheme and the related false, fraudulent, and unlawful acts are not readily evident or ascertainable from the bills and records submitted by the Pharmacy Defendants, which are the same materials upon which Allstate relied in processing or paying each of the Pharmacy Defendants' No-Fault claims.

570. Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

571. Thus, every time that Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, and Gukasyan caused Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG to submit No-Fault reimbursement demands to Allstate, Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov,

Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, and Gukasyan necessarily certified that Cypress, Briar, Better Soon, Story Ave, Galaxy,  Esmeralda, 167 Rx, Family Care, S&N, and ASG were eligible to be reimbursed under New York's No-Fault laws.

572.    Further, Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, and Gukasyan caused Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG to make payments to KD Wholesale, MBJ Wholesale, and YBJ Wholesale representing the proceeds of the scheme to defraud through Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG for the purpose of concealing the ultimate recipients and beneficiaries of these unlawful profits.

573.    KD Wholesale, MBJ Wholesale, and YBJ Wholesale were shell companies used by Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, Gukasyan, Mashiyev, Mirzakandov, and B. Yakubov to launder the proceeds of the Defendants' scheme to defraud to permit it to continue undetected.

574.    The full extent of Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, Gukasyan, Mashiyev, Mirzakandov, and B. Yakubov's fraudulent and unlawful acts relative to their participation in the KD Wholesale, MBJ Wholesale, and YBJ Wholesale enterprises was not known to Allstate until shortly before it commenced this action.

## VIII.   ALLSTATE'S JUSTIFIABLE RELIANCE

575.    The Defendants' pattern of submitting and prosecuting baseless and repetitive claims has helped perpetuate their RICO violations.

576.    Each claim submitted to Allstate by Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG was verified according to Insurance Law § 403.

577.    Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, and Gukasyan, as pharmacy owners, were responsible for the proper conduct of Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG in accordance with New York law.

578.    To induce Allstate to promptly pay Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG's patient invoices, Kimyagarov, Denegall, Abramova, D. Yakubov, Verbitsky, Zavulunov, Shalomov, Borukhov, Shamalov, Polvanova, Leviyev, Malakov, Dzhurayev, Natanov, and Gukasyan submitted (or caused to be submitted) to Allstate NF-3 bills certifying that Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG were eligible to be reimbursed under New York's No-Fault Laws.

579.    Further, to induce Allstate to promptly pay the fraudulent charges for prescription drug and other pharmacy services purportedly provided to Allstate claimants, the Defendants hired attorneys to collect payment from Allstate on the Pharmacy Defendants' fraudulent No-Fault claims. These attorneys routinely demand payment and file collection actions against Allstate.

580.    Allstate is under statutory and contractual obligations to promptly and fairly process claims within thirty (30) days. The facially valid documents submitted to Allstate by (or on behalf of) Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG in support of the fraudulent and/or non-compensable charges at issue, combined with the

material misrepresentations described above, were designed to and did, cause Allstate to justifiably rely on them.

581.    The Defendants concealed from Allstate the truth regarding Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG's reimbursement eligibility under New York law.

582.    In reasonable reliance on these misrepresentations, Allstate paid money to Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG to its detriment.

583.    Allstate would not have paid these monies to Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG had the Defendants provided true and accurate information about the fact and necessity of the billed-for drugs, or the existence of fraudulent prescription protocols and unlawful referral arrangements—those facts were material to Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG's No-Fault reimbursement eligibility under N.Y. Insurance Law § 5101, *et seq.*

584.    As a result, Allstate was caused to pay Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG, collectively, over $1,480,700.00 in reasonable reliance on the Defendants' false No-Fault claim reimbursement documentation and the false representations regarding Cypress, Briar, Better Soon, Story Ave, Galaxy, Esmeralda, 167 Rx, Family Care, S&N, and ASG's eligibility for reimbursement under New York's No-Fault Laws.

## IX.    **DAMAGES**

585.    The Defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary

for Allstate to calculate damages with specificity at this stage in the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for payments in connection with first-party claims in excess of $1,463,999.00, the exact amount to be determined at trial, including:

a. Payments made to Cypress Rx Inc. in connection with first-party claims in excess of $129,600.00, the exact amount to be determined at trial. The chart annexed at Exhibit 37, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Cypress Rx Inc. in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

b. Payments made to Briar Drug Store Inc d/b/a Briarwood Rx in connection with first-party claims in excess of $76,034.00, the exact amount to be determined at trial. The chart annexed at Exhibit 38, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Briar Drug Store Inc d/b/a Briarwood Rx in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

c. Payments made to Better Soon Rx Inc. in connection with first-party claims in excess of $231,102.00, the exact amount to be determined at trial. The chart annexed at Exhibit 39, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Better Soon Rx Inc. in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

d. Payments made to Story Ave Pharmacy Inc d/b/a 99 Cents & Up in connection with first-party claims in excess of $227,365.00, the exact amount to be determined at trial. The chart annexed at Exhibit 40, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Story Ave Pharmacy Inc d/b/a 99 Cents & Up in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

e. Payments made to Galaxy Rx Inc in connection with first-party claims in excess of $242,086.00, the exact amount to be determined at trial. The chart annexed at Exhibit 41, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Galaxy Rx Inc in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

f. Payments made to Esmeralda Pharmacy Inc in connection with first-party claims in excess of $37,975.00, the exact amount to be determined at trial. The chart annexed at Exhibit 42, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Esmeralda Pharmacy Inc in connection with first-

party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

g.   Payments made to 167 Rx Inc in connection with first-party claims in excess of $188,618.00, the exact amount to be determined at trial.  The chart annexed at Exhibit 43, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to 167 Rx Inc in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

h.   Payments made to Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy in connection with first-party claims in excess of $82,103.00, the exact amount to be determined at trial.  The chart annexed at Exhibit 44, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

i.   Payments made to S&N NYC Inc d/b/a Colden Pharmacy in connection with first-party claims in excess of $189,930.00, the exact amount to be determined at trial. The chart annexed at Exhibit 45, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to S&N NYC Inc d/b/a Colden Pharmacy in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

j.   Payments made to ASG Rx Corp in connection with first-party claims in excess of $59,183.00, the exact amount to be determined at trial.  The chart annexed at Exhibit 46, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to ASG Rx Corp in connection with first-party ("No-Fault") claims determined to be fraudulent and non-compensable as of the filing of this Complaint.

## X.   CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### CYPRESS RX INC. ENTERPRISE
**(Against Avi Abraham Kimyagarov, John Denegall, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

586.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

587.   In furtherance of their operation and management of Cypress Rx Inc., Defendants Avi Abraham Kimyagarov, John Denegall, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ

Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count I Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

588.    The Count I Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 27.

589.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

590.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

591.    Payments made by Allstate to Cypress Rx Inc. were delivered through the U.S. Mail.

592.    As documented above, the Count I Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by Cypress Rx Inc. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

593.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and

employees, issued drafts to Cypress Rx Inc. for the benefit of one or more of the Count I Defendants that would not otherwise have been paid.

594.    The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count I Defendants to continue this scheme without being detected.

595.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

596.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Cypress Rx Inc. for the benefit of the Count I Defendants.

597.    Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

598.    Cypress Rx Inc. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

599.    The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

600.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count I Defendants' conduct.

601.    The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

602.     Because of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### CYPRESS RX INC. ENTERPRISE
**(Against Avi Abraham Kimyagarov, John Denegall, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

603.     Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 585 as if fully set forth herein.

604.     Through their participation in the operation and management of Cypress Rx Inc., Defendants Avi Abraham Kimyagarov, John Denegall, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count II Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

605.     The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Cypress Rx Inc. through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 27, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

606.     The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Cypress Rx Inc., even though Cypress Rx Inc., as a result of the Count II Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

607.    The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

608.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

609.    Because of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### BRIAR DRUG STORE INC D/B/A BRIARWOOD RX ENTERPRISE
**(Against Anna Abramova, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

610.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

611.    In furtherance of their operation and management of Briar Drugstore Inc d/b/a Briarwood Rx, Defendants Anna Abramova, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count III Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

612.    The Count III Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 28.

613.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

614.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

615.    Payments made by Allstate to Briar Drugstore Inc. d/b/a Briarwood Rx were delivered through the U.S. Mail.

616.    As documented above, the Count III Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by Briar Drugstore Inc. d/b/a Briarwood Rx to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

617.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Briar Drugstore Inc. d/b/a Briarwood Rx for the benefit of one or more of the Count III Defendants that would not otherwise have been paid.

618.    The Count III Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing

legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count III Defendants to continue this scheme without being detected.

619.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

620.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Briar Drugstore Inc. for the benefit of the Count III Defendants.

621.    Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

622.    Briar Drugstore Inc. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

623.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

624.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count III Defendants' conduct.

625.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

626.    Because of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IV
## VIOLATIONS OF 18 U.S.C. § 1962(d)
## BRIAR DRUG STORE INC D/B/A BRIARWOOD RX ENTERPRISE
### (Against Anna Abramova, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)

627.    Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 585 as if fully set forth herein.

628.    Through their participation in the operation and management of Briar Drugstore Inc., Defendants Anna Abramova, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

629.    The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Briar Drugstore Inc. through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 28, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

630.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Briar Drugstore Inc., even though Briar Drugstore Inc., as a result of the Count IV Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

631.    The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

632.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

633.    Because of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT V**
**VIOLATIONS OF 18 U.S.C. § 1962©**
**BETTER SOON RX INC. ENTERPRISE**
**(Against Deni Yakubov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc.,**
**Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

634.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

635.    In furtherance of their operation and management of Better Soon Rx Inc., Defendants Deni Yakubov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count V Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

636.    The Count V Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 29.

637.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

638.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

639.    Payments made by Allstate to Better Soon Rx Inc. were delivered through the U.S. Mail.

640.    As documented above, the Count V Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by Better Soon Rx Inc. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

641.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Better Soon Rx Inc. for the benefit of one or more of the Count V Defendants that would not otherwise have been paid.

642.    The Count V Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count V Defendants to continue this scheme without being detected.

643.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

644.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Better Soon Rx Inc. for the benefit of the Count V Defendants.

645. Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

646. Better Soon Rx Inc. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

647. The Count V Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

648. Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count V Defendants' conduct.

649. The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

650. Because of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT VI
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### BETTER SOON RX INC. ENTERPRISE
**(Against Deni Yakubov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

651. Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 585 as if fully set forth herein.

652. Through their participation in the operation and management of Better Soon Rx Inc., Defendants Deni Yakubov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale

Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count VI Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

653.    The Count VI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Better Soon Rx Inc. through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 29, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

654.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Better Soon Rx Inc., even though Better Soon Rx Inc., as a result of the Count VI Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

655.    The Count VI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

656.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

657.    Because of this violation of 18 U.S.C. § 1962(d), the Count VI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### STORY AVE PHARMACY INC D/B/A 99 CENTS & UP ENTERPRISE
### (Against Albert Malakov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)

658.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

659.    In furtherance of their operation and management of Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Defendants Albert Malakov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count VII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

660.    The Count VII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 30.

661.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

662.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

663.    Payments made by Allstate to Story Ave Pharmacy Inc d/b/a 99 Cents & Up were delivered through the U.S. Mail.

664. As documented above, the Count VII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by Story Ave Pharmacy Inc d/b/a 99 Cents & Up to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

665. As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Story Ave Pharmacy Inc d/b/a 99 Cents & Up for the benefit of one or more of the Count VII Defendants that would not otherwise have been paid.

666. The Count VII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count VII Defendants to continue this scheme without being detected.

667. The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

668. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Story Ave Pharmacy Inc d/b/a 99 Cents & Up for the benefit of the Count VII Defendants.

669. Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

670. Story Ave Pharmacy Inc d/b/a 99 Cents & Up constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

671.    The Count VII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

672.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count VII Defendants' conduct.

673.    The Count VII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

674.    Because of the Count VII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VIII**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**STORY AVE PHARMACY INC D/B/A 99 CENTS & UP ENTERPRISE**
**(Against Albert Malakov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

675.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

676.    Through their participation in the operation and management of Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Defendants Albert Malakov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count VIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

677.    The Count VIII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Story Ave Pharmacy Inc d/b/a 99 Cents &

Up through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 30, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

678.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Story Ave Pharmacy Inc d/b/a 99 Cents & Up, even though Story Ave Pharmacy Inc d/b/a 99 Cents & Up, as a result of the Count VIII Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

679.    The Count VIII Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

680.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

681.    Because of this violation of 18 U.S.C. § 1962(d), the Count VIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### GALAXY RX INC ENTERPRISE
**(Against Irina Polvanova, Natan Leviyev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

682.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

683.    In furtherance of their operation and management of Galaxy Rx Inc, Defendants Irina Polvanova, Natan Leviyev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count IX Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

684.    The Count IX Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 31.

685.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

686.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

687.    Payments made by Allstate to Galaxy Rx Inc were delivered through the U.S. Mail.

688.    As documented above, the Count IX Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by Galaxy Rx Inc to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

689.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and

employees, issued drafts to Galaxy Rx Inc for the benefit of one or more of the Count IX Defendants that would not otherwise have been paid.

690.    The Count IX Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count IX Defendants to continue this scheme without being detected.

691.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

692.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Galaxy Rx Inc for the benefit of the Count IX Defendants.

693.    Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

694.    Galaxy Rx Inc constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

695.    The Count IX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

696.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count IX Defendants' conduct.

697.    The Count IX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

698.    Because of the Count IX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT X**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**GALAXY RX INC ENTERPRISE**
**(Against Irina Polvanova, Natan Leviyev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

699.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

700.    Through their participation in the operation and management of Galaxy Rx Inc, Defendants Irina Polvanova, Natan Leviyev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count X Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

701.    The Count X Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Galaxy Rx Inc through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 31, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

702.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Galaxy Rx Inc, even though Galaxy Rx Inc, as a result of the Count X Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

703.    The Count X Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

704.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

705.    Because of this violation of 18 U.S.C. § 1962(d), the Count X Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XI
## VIOLATIONS OF 18 U.S.C. § 1962(c)
## ESMERALDA PHARMACY INC ENTERPRISE
**(Against Vladimir Verbitsky, Aron Zavulunov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

706.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

707.    In furtherance of their operation and management of Esmeralda Pharmacy Inc, Defendants Vladimir Verbitsky, Aron Zavulunov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XI Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

708.    The Count XI Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 32.

709.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

710.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

711.    Payments made by Allstate to Esmeralda Pharmacy Inc were delivered through the U.S. Mail.

712.    As documented above, the Count XI Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by Esmeralda Pharmacy Inc to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

713.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Esmeralda Pharmacy Inc for the benefit of one or more of the Count XI Defendants that would not otherwise have been paid.

714.    The Count XI Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing

legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count XI Defendants to continue this scheme without being detected.

715.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

716.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Esmeralda Pharmacy Inc for the benefit of the Count XI Defendants.

717.    Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

718.    Esmeralda Pharmacy Inc constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

719.    The Count XI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

720.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count XI Defendants' conduct.

721.    The Count XI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

722.    Because of the Count XI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XII
## VIOLATIONS OF 18 U.S.C. § 1962(d)
## ESMERALDA PHARMACY INC ENTERPRISE
### (Against Vladimir Verbitsky, Aron Zavulunov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)

723.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

724.    Through their participation in the operation and management of Esmeralda Pharmacy Inc, Defendants Vladimir Verbitsky, Aron Zavulunov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XII Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

725.    The Count XII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Esmeralda Pharmacy Inc through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 32, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

726.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Esmeralda Pharmacy Inc, even though Esmeralda Pharmacy Inc, as a result of the Count XII Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

727.    The Count XII Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

728.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

729.    Because of this violation of 18 U.S.C. § 1962(d), the Count XII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>COUNT XIII</u>
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**167 RX INC ENTERPRISE**
**(Against Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

730.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

731.    In furtherance of their operation and management of 167 Rx Inc, Defendants Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XIII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

732.    The Count XIII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 33.

733. Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

734. Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

735. Payments made by Allstate to 167 Rx Inc were delivered through the U.S. Mail.

736. As documented above, the Count XIII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by 167 Rx Inc to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

737. As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to 167 Rx Inc for the benefit of one or more of the Count XIII Defendants that would not otherwise have been paid.

738. The Count XIII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count XIII Defendants to continue this scheme without being detected.

739. The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

740.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to 167 Rx Inc for the benefit of the Count XIII Defendants.

741.    Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

742.    167 Rx Inc constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

743.    The Count XIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

744.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count XIII Defendants' conduct.

745.    The Count XIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

746.    Because of the Count XIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## <u>COUNT XIV</u>
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### 167 RX INC ENTERPRISE
**(Against Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

747.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

748.    Through their participation in the operation and management of 167 Rx Inc, Defendants Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XIV Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

749.    The Count XIV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of 167 Rx Inc through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 33, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

750.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of 167 Rx Inc, even though 167 Rx Inc, as a result of the Count XIV Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

751.    The Count XIV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

752.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

753.    Because of this violation of 18 U.S.C. § 1962(d), the Count XIV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XV**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**FAMILY CARE PHARMACY OF LI INC**
**D/B/A FAMILY CARE PHARMACY ENTERPRISE**
**(Against Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, KD Wholesale Inc.,**
**MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and**
**Benjamin Yakubov)**

754.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

755.    In furtherance of their operation and management of Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, Defendants Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XV Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

756.    The Count XV Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 34.

757.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

758.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

759.    Payments made by Allstate to Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy were delivered through the U.S. Mail.

760.    As documented above, the Count XV Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

761.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy for the benefit of one or more of the Count XV Defendants that would not otherwise have been paid.

762.    The Count XV Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count XV Defendants to continue this scheme without being detected.

763.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

764.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy for the benefit of the Count XV Defendants.

765. Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

766. Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

767. The Count XV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

768. Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count XV Defendants' conduct.

769. The Count XV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

770. Because of the Count XV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVI
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### FAMILY CARE PHARMACY OF LI INC
### D/B/A FAMILY CARE PHARMACY ENTERPRISE
**(Against Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

771. Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

772. Through their participation in the operation and management of Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, Defendants Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XVI Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

773. The Count XVI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Family Care Pharmacy of LI Inc  d/b/a Family Care Pharmacy through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 34, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

774. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, even though Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, as a result of the Count XVI Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

775. The Count XVI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

776. Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

777. Because of this violation of 18 U.S.C. § 1962(d), the Count XVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XVII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**S&N NYC INC d/b/a COLDEN PHARMACY ENTERPRISE**
**(Against Shamir Dzhurayev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

778.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

779.    In furtherance of their operation and management of S&N NYC Inc d/b/a Colden Pharmacy, Defendants Shamir Dzhurayev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XVII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

780.    The Count XVII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 35.

781.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

782.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

783.    Payments made by Allstate to S&N NYC Inc d/b/a Colden Pharmacy were delivered through the U.S. Mail.

784.    As documented above, the Count XVII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to Topical Pain Products and other drugs dispensed and delivered by S&N NYC Inc d/b/a Colden Pharmacy to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

785.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to S&N NYC Inc d/b/a Colden Pharmacy for the benefit of one or more of the Count XVII Defendants that would not otherwise have been paid.

786.    The Count XVII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count XVII Defendants to continue this scheme without being detected.

787.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

788.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to S&N NYC Inc d/b/a Colden Pharmacy for the benefit of the Count XVII Defendants.

789.    Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

790.    S&N NYC Inc d/b/a Colden Pharmacy constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

791.    The Count XVII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

792.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count XVII Defendants' conduct.

793.    The Count XVII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

794.    Because of the Count XVII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVIII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### S&N NYC INC d/b/a COLDEN PHARMACY ENTERPRISE
**(Against Shamir Dzhurayev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

795.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

796.    Through their participation in the operation and management of S&N NYC Inc d/b/a Colden Pharmacy, Defendants Shamir Dzhurayev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XVIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

797.    The Count XVIII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of S&N NYC Inc d/b/a Colden Pharmacy through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 35, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

798.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of S&N NYC Inc d/b/a Colden Pharmacy, even though S&N NYC Inc d/b/a Colden Pharmacy, as a result of the Count XVIII Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

799.    The Count XVIII Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

800.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

801.    Because of this violation of 18 U.S.C. § 1962(d), the Count XVIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XIX**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**ASG RX Corp ENTERPRISE**
**(Against Lazar Natanov, Arthur Gukasyan, KD Wholesale Inc., MBJ Wholesale Inc., and**
**YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

802.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

803.    In furtherance of their operation and management of ASG Rx Corp, Defendants Lazar Natanov, Arthur Gukasyan, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XIX Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Allstate insurance claims in furtherance of this scheme to defraud.

804.    The Count XIX Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 36.

805.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Allstate through the U.S. Mail.

806.    Policies of insurance were delivered to two or more Allstate claimants through the U.S. Mail.

807.    Payments made by Allstate to ASG Rx Corp were delivered through the U.S. Mail.

808.    As documented above, the Count XIX Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to

Allstate related to Topical Pain Products and other drugs dispensed and delivered by ASG Rx Corp to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

809.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to ASG Rx Corp for the benefit of one or more of the Count XIX Defendants that would not otherwise have been paid.

810.    The Count XIX Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a significant period, thus enabling the Count XIX Defendants to continue this scheme without being detected.

811.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

812.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to ASG Rx Corp for the benefit of the Count XIX Defendants.

813.    Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

814.    ASG Rx Corp constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

815.    The Count XIX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

816.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count XIX Defendants' conduct.

817.    The Count XIX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

818.    Because of the Count XIX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XX
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### ASG RX Corp ENTERPRISE
**(Against Shamir Dzhurayev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

819.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

820.    Through their participation in the operation and management of ASG Rx Corp, Defendants Lazar Natanov, Arthur Gukasyan, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov (collectively, "Count XX Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

821.    The Count XX Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of ASG Rx Corp through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 36, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

822.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of ASG Rx Corp, even ASG Rx Corp, as a result of the Count XX Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

823.    The Count XX Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

824.    Allstate has been injured in its business and property because of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

825.    Because of this violation of 18 U.S.C. § 1962(d), the Count XX Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## <u>COUNT XXI</u>
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### KD WHOLESALE INC. ENTERPRISE
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Shlomo Mashiyev)**

826.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

827.    Defendants Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Shlomo Mashiyev (collectively, "Count XXI Defendants") participated in the operation and management of KD Wholesale Inc., and used this enterprise in furtherance of their scheme to defraud Allstate.

828.    The Count XXI Defendants engaged in the money laundering scheme detailed above.  The Count XXI Defendants' misconduct is demonstrated by the payments made to KD Wholesale Inc. in furtherance of this scheme.  *See* Exhibit 8.

829.    The Count XXI Defendants used the transactions with KD Wholesale Inc. to (a) promote the Defendants' scheme, (b) conceal the nature and ownership of the scheme's proceeds, and (c) evade transaction and tax reporting requirements.

830.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1956 (laundering of monetary instruments).

831.    By laundering the proceeds of their scheme to defraud, the Count XXI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

832.    The activities alleged in this case had the direct effect of causing Allstate to issue payments in connection with fraudulent No-Fault claims for the benefit of the Count XXI Defendants.

833.    KD Wholesale Inc. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

834.    The Count XXI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

835.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count XXI Defendants' conduct.

836.    The Count XXI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

837.    Because of the Count XXI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained as a result of this scheme, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXII
## VIOLATIONS OF 18 U.S.C. § 1962(d)
## KD WHOLESALE INC. ENTERPRISE
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Shlomo Mashiyev)**

838.    Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 585 as if fully set forth herein.

839.    Defendants Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a

Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Shlomo Mashiyev (collectively, "Count XXII Defendants") conspired with each other to violate 18 U.S.C. § 1962(d) through their participation in the operation and management of KD Wholesale Inc.

840.    The Count XXII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of KD Wholesale Inc. through a pattern of racketeering activity, including the money laundering transactions listed in Exhibit 8.

841.    The purpose of the conspiracy was to use KD Wholesale Inc. to (a) promote the Defendants' scheme, (b) conceal the nature and ownership of the scheme's proceeds, and (c) evade transaction and tax reporting requirements.

842.    The Count XXII Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, which included collecting payments on fraudulent No-Fault claims, transferring the proceeds to sham entities, and converting the proceeds to cash and jewelry through phony transactions with the Dealers.

843.    Allstate has been injured in its business and property because of this conspiratorial conduct.  Allstate's injuries include, but are not limited to, payments that it was wrongfully induced to make on fraudulent No-Fault claims that were generated through the Defendants' scheme (*see* Exhibits 37-46); they also include other resources that Allstate was forced to spend in reaction to demands and legal actions brought by the Pharmacy Defendants and their agents seeking to collect payment on fraudulent No-Fault claims.  The Count XXII Defendants' money laundering conduct

is a direct and proximate cause of Allstate's injuries whereas the transactions helped promote and further a scheme to collect payments on fraudulent No-Fault claims.

844. Because of this violation of 18 U.S.C. § 1962(d), the Count XXII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## **COUNT XXIII**
### **VIOLATIONS OF 18 U.S.C. § 1962(c)**
### **MBJ WHOLESALE INC. ENTERPRISE**
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Brian Mirzakandov)**

845. Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

846. Defendants Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Brian Mirzakandov (collectively, "Count XXIII

Defendants") participated in the operation and management of MBJ Wholesale Inc., and used this enterprise in furtherance of their scheme to defraud Allstate.

847.    The Count XXIII Defendants engaged in the money laundering scheme detailed above.  The Count XXIII Defendants' misconduct is demonstrated by the payments made to MBJ Wholesale Inc. in furtherance of this scheme.  *See* Exhibit 9.

848.    The Count XXIII Defendants used the transactions with MBJ Wholesale Inc. to (a) promote the Defendants' scheme, (b) conceal the nature and ownership of the scheme's proceeds, and (c) evade transaction and tax reporting requirements.

849.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1956 (laundering of monetary instruments).

850.    By laundering the proceeds of their scheme to defraud, the Count XXIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

851.    The activities alleged in this case had the direct effect of causing Allstate to issue payments in connection with fraudulent No-Fault claims for the benefit of the Count XXIII Defendants.

852.    MBJ Wholesale Inc. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

853.    The Count XXIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

854.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count XXIII Defendants' conduct.

855.    The Count XXIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

856.    Because of the Count XXIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained as a result of this scheme, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXIV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### MBJ WHOLESALE INC. ENTERPRISE
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Brian Mirzakandov)**

857.    Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 585 as if fully set forth herein.

858.    Defendants Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Brian Mirzakandov (collectively, "Count XXIV Defendants") conspired with each other to violate 18 U.S.C. § 1962(d) through their participation in the operation and management of MBJ Wholesale Inc.

859.    The Count XXIV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of MBJ Wholesale Inc. through a pattern of racketeering activity, including the money laundering transactions listed in Exhibit 9.

860.    The purpose of the conspiracy was to use MBJ Wholesale Inc. to (a) promote the Defendants' scheme, (b) conceal the nature and ownership of the scheme's proceeds, and (c) evade transaction and tax reporting requirements.

861.    The Count XXIV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, which included collecting payments on fraudulent No-Fault claims, transferring the proceeds to sham entities, and converting the proceeds to cash and jewelry through phony transactions with the Dealers.

862.    Allstate has been injured in its business and property because of this conspiratorial conduct.  Allstate's injuries include, but are not limited to, payments that it was wrongfully induced to make on fraudulent No-Fault claims that were generated through the Defendants' scheme (*see* Exhibits 37-46); they also include other resources that Allstate was forced to spend in reaction to demands and legal actions brought by the Pharmacy Defendants and their agents seeking to collect payment on fraudulent No-Fault claims.  The Count XXIV Defendants' money laundering conduct is a direct and proximate cause of Allstate's injuries whereas the transactions helped promote and further a scheme to collect payments on fraudulent No-Fault claims.

863.    Because of this violation of 18 U.S.C. § 1962(d), the Count XXIV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### YBJ WHOLESALE INC. ENTERPRISE
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Benjamin Yakubov)**

864.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

865.    Defendants Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Benjamin Yakubov (collectively, "Count XXV Defendants") participated in the operation and management of YBJ Wholesale Inc., and used this enterprise in furtherance of their scheme to defraud Allstate.

866.    The Count XXV Defendants engaged in the money laundering scheme detailed above.  The Count XXV Defendants' misconduct is demonstrated by the payments made to YBJ Wholesale Inc. in furtherance of this scheme.  *See* Exhibit 10.

867.    The Count XXV Defendants used the transactions with YBJ Wholesale Inc. to (a) promote the Defendants' scheme, (b) conceal the nature and ownership of the scheme's proceeds, and (c) evade transaction and tax reporting requirements.

166

868.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1956 (laundering of monetary instruments).

869.    By laundering the proceeds of their scheme to defraud, the Count XXV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

870.    The activities alleged in this case had the direct effect of causing Allstate to issue payments in connection with fraudulent No-Fault claims for the benefit of the Count XXV Defendants.

871.    YBJ Wholesale Inc. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

872.    The Count XXV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

873.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count XXV Defendants' conduct.

874.    The Count XXV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

875.    Because of the Count XXV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained as a result of this scheme, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXVI**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**YBJ WHOLESALE INC. ENTERPRISE**
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Benjamin Yakubov)**

876.    Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 585 as if fully set forth herein.

877.    Defendants Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Benjamin Yakubov (collectively, "Count XXVI Defendants") conspired with each other to violate 18 U.S.C. § 1962(d) through their participation in the operation and management of YBJ Wholesale Inc.

878.    The Count XXVI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of YBJ Wholesale Inc. through a pattern of racketeering activity, including the money laundering transactions listed in Exhibit 10.

879.    The purpose of the conspiracy was to use YBJ Wholesale Inc. to (a) promote the Defendants' scheme, (b) conceal the nature and ownership of the scheme's proceeds, and (c) evade transaction and tax reporting requirements.

880.    The Count XXVI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, which included collecting payments on fraudulent No-Fault claims, transferring the proceeds to sham entities, and converting the proceeds to cash and jewelry through phony transactions with the Dealers.

881.    Allstate has been injured in its business and property because of this conspiratorial conduct.  Allstate's injuries include, but are not limited to, payments that it was wrongfully induced to make on fraudulent No-Fault claims that were generated through the Defendants' scheme (*see* Exhibits 37-46); they also include other resources that Allstate was forced to spend in reaction to demands and legal actions brought by the Pharmacy Defendants and their agents seeking to collect payment on fraudulent No-Fault claims.  The Count XXVI Defendants' money laundering conduct is a direct and proximate cause of Allstate's injuries whereas the transactions helped promote and further a scheme to collect payments on fraudulent No-Fault claims.

882.    Because of this violation of 18 U.S.C. § 1962(d), the Count XXVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXVII
## COMMON LAW FRAUD
### (Against All Defendants)

883.    Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 585 as if fully set forth herein.

884.    The Defendants schemed to defraud Allstate by, among other things, (a) billing Allstate for drugs that were not medically necessary and were completely unjustified to treat the

Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or € maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs.

885.    The Defendants' scheme to defraud Allstate was dependent upon a succession of material misrepresentations of fact related to Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp's eligibility for and entitlement to No-Fault reimbursement under New York law.

886.    The misrepresentations of fact by the Defendants included, but were not limited to, material misrepresentations of fact made in Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp's NF-3 forms, prescription forms, patient treatment records, delivery receipts, peer-review rebuttals, health insurance claim forms, other No-Fault claim reimbursement documents, letters, and/or payment requests.

887.    The Defendants' representations were false or required disclosure of additional facts to render the documents, information, and materials furnished not misleading.

888.    The misrepresentations were intentionally made by the Defendants in furtherance of their scheme to defraud Allstate by submitting claims on behalf of Cypress Rx Inc., Briar Drug

Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp demanding payment of No-Fault insurance benefits.

889.    The Defendants knew that the representations contained in the No-Fault claim reimbursement documentation relating to Allstate claimants were false, and were made to induce Allstate to make payments for claims that were not legitimate or lawfully compensable.

890.    Allstate reasonably relied, to its detriment, upon the Defendants' material misrepresentations concerning Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp's eligibility to receive No-Fault reimbursement in paying numerous bills for prescription drugs and other pharmacy expenses according to New York's No-Fault insurance laws.

891.    Allstate's damages include, but are not necessarily limited to, No-Fault monies paid to Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp—totaling more than $1,463,999.00—for prescription drug and other pharmacy expenses and services rendered to Allstate claimants, even though Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and

ASG Rx Corp were, at all relevant times, ineligible to receive No-Fault reimbursement under New York law.

**COUNT XXVIII**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

892.    Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 585 as if fully set forth herein.

893.    As alleged herein, the Defendants, through various means, conspired to induce Allstate to make numerous and substantial payments to Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp in connection with claims made under New York's No-Fault Laws.

894.    When Allstate paid Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp, Allstate reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Defendants, or those persons working under their control, made (or were caused to make) concerning Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp's reimbursement eligibility under New York's No-Fault Laws.

895.    Every No-Fault reimbursement payment that Allstate was caused to make to (or for the benefit of) Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp during this scheme constitutes a benefit that the Defendants aggressively caused Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp to seek and voluntarily accept.

896.    Throughout their scheme, the Defendants caused Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp to wrongfully obtain a multitude of payments from Allstate—totaling over $1,480,700.00—as a direct and proximate result of the unlawful conduct detailed throughout this Complaint.

897.    Under New York law, the Defendants had no legal right to seek, collect, or retain assigned No-Fault payments made by Allstate in connection with claims submitted by (or on behalf of) the Defendants because Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp (a) billed Allstate for drugs that were not medically necessary and were completely unjustified to treat the Allstate claimants' purported injuries, (b) falsely charged for drugs with the knowledge that such drugs were not lawfully reimbursable under New

York's No-Fault laws, (c) charged Allstate for drugs at grossly excessive rates, (d) billed for drugs and medications that were not actually prescribed or authorized by the treating provider, (e) dispensed drugs and medications in violation of applicable regulatory and licensing requirements, and/or (f) maintained unlawful relationships with prescribers and induced them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs.

898.    As a direct and proximate result of this unlawful conduct relating to the billing for fraudulent, unnecessary, and ineffective drugs with respect to Allstate claimants, at no point were Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp ever eligible for reimbursement under New York's No-Fault Laws.

899.    Throughout this scheme, the Defendants obtained substantial monetary benefits as the result of their unlawful conduct, benefits that were derived, in part, directly from the No-Fault reimbursement payments that Allstate was wrongfully induced to make to Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp

900.    Retention of those benefits by any of the Defendants would violate fundamental principles of justice, equity, and good conscience.

## COUNT XXIX
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Cypress Rx Inc.)

901.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

902.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

903.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, Cypress Rx Inc. was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

904.    Cypress Rx Inc. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

905.    Cypress Rx Inc. continues to challenge Allstate's prior claim denials.

906.    Cypress Rx Inc. continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.  The scheme is being monetized through Cypress Rx Inc.'s collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

907.    A justifiable controversy exists between Allstate and Cypress Rx Inc. because Cypress Rx Inc. rejects Allstate's ability to deny such claims.

908.    Allstate has no adequate remedy at law.

909.    Cypress Rx Inc. also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by Cypress Rx Inc.

910.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that Cypress Rx Inc. has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, Cypress Rx Inc.

**COUNT XXX**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Briar Drug Store Inc d/b/a Briarwood Rx)**

911.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

912.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

913.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, Briar Drug Store Inc d/b/a Briarwood Rx was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

176

914.    Briar Drug Store Inc d/b/a Briarwood Rx continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

915.    Briar Drug Store Inc d/b/a Briarwood Rx continues to challenge Allstate's prior claim denials.

916.    Briar Drug Store Inc d/b/a Briarwood Rx continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.  The scheme is being monetized through Briar Drug Store Inc d/b/a Briarwood Rx's collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

917.    A justifiable controversy exists between Allstate and Briar Drug Store Inc d/b/a Briarwood Rx because Briar Drug Store Inc d/b/a Briarwood Rx rejects Allstate's ability to deny such claims.

918.    Allstate has no adequate remedy at law.

919.    Briar Drug Store Inc d/b/a Briarwood Rx also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by Briar Drug Store Inc d/b/a Briarwood Rx.

920.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that Briar Drug Store Inc d/b/a Briarwood Rx has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, Briar Drug Store Inc d/b/a Briarwood Rx.

**COUNT XXXI**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Better Soon Rx Inc.)**

921.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

922.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

923.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, Better Soon Rx Inc. was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

924.    Better Soon Rx Inc. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

925.    Better Soon Rx Inc. continues to challenge Allstate's prior claim denials.

926.    Better Soon Rx Inc. continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.  The scheme is being monetized through Better Soon Rx Inc.'s collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

927.    A justifiable controversy exists between Allstate and Better Soon Rx Inc. because Better Soon Rx Inc. rejects Allstate's ability to deny such claims.

928.    Allstate has no adequate remedy at law.

929.    Better Soon Rx Inc. also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by Better Soon Rx Inc.

930.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that Better Soon Rx Inc. has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, Better Soon Rx Inc.

## COUNT XXXII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Story Ave Pharmacy Inc d/b/a 99 Cents & Up)

931.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

932.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

933.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements,

and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, Story Ave Pharmacy Inc d/b/a 99 Cents & Up was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

934.    Story Ave Pharmacy Inc d/b/a 99 Cents & Up continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

935.    Story Ave Pharmacy Inc d/b/a 99 Cents & Up continues to challenge Allstate's prior claim denials.

936.    Story Ave Pharmacy Inc d/b/a 99 Cents & Up continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.  The scheme is being monetized through Story Ave Pharmacy Inc d/b/a 99 Cents & Up's collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

937.    A justifiable controversy exists between Allstate and Story Ave Pharmacy Inc d/b/a 99 Cents & Up because Story Ave Pharmacy Inc d/b/a 99 Cents & Up rejects Allstate's ability to deny such claims.

938.    Allstate has no adequate remedy at law.

939.    Story Ave Pharmacy Inc d/b/a 99 Cents & Up also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by Story Ave Pharmacy Inc d/b/a 99 Cents & Up.

940.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that Story Ave Pharmacy Inc d/b/a 99 Cents & Up has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, Story Ave Pharmacy Inc d/b/a 99 Cents & Up.

## COUNT XXXIII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Galaxy Rx Inc)

941.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

942.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

943.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, Galaxy Rx Inc was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

944.    Galaxy Rx Inc continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

945.    Galaxy Rx Inc continues to challenge Allstate's prior claim denials.

946.    Galaxy Rx Inc continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.  The scheme is being monetized through Galaxy Rx Inc's collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

947.    A justifiable controversy exists between Allstate and Galaxy Rx Inc because Galaxy Rx Inc rejects Allstate's ability to deny such claims.

948.    Allstate has no adequate remedy at law.

949.    Galaxy Rx Inc also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by Galaxy Rx Inc.

950.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that Galaxy Rx Inc has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, Galaxy Rx Inc.

## COUNT XXXIV
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Esmeralda Pharmacy Inc)

951.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

952.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

953.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, Esmeralda Pharmacy Inc was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

954.    Esmeralda Pharmacy Inc continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

955.    Esmeralda Pharmacy Inc continues to challenge Allstate's prior claim denials.

956.    Esmeralda Pharmacy Inc continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.   The scheme is being monetized through Esmeralda Pharmacy Inc's collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

957.    A justifiable controversy exists between Allstate and Esmeralda Pharmacy Inc because Esmeralda Pharmacy Inc rejects Allstate's ability to deny such claims.

958.    Allstate has no adequate remedy at law.

959.    Esmeralda Pharmacy Inc also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by Esmeralda Pharmacy Inc.

960.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that Esmeralda Pharmacy Inc has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, Esmeralda Pharmacy Inc.

**COUNT XXXV**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against 167 Rx Inc)**

961.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

962.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

963.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, 167 Rx Inc was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

964.    167 Rx Inc continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

965.    167 Rx Inc continues to challenge Allstate's prior claim denials.

966.    167 Rx Inc continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.  The scheme is being monetized through 167 Rx Inc's collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

967.    A justifiable controversy exists between Allstate and 167 Rx Inc because 167 Rx Inc rejects Allstate's ability to deny such claims.

968.    Allstate has no adequate remedy at law.

969.    167 Rx Inc also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by 167 Rx Inc.

970.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that 167 Rx Inc has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, 167 Rx Inc.

## COUNT XXXVI
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy)

971.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

972.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

973.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

974.    Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

975.    Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy continues to challenge Allstate's prior claim denials.

976.    Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.  The scheme is being monetized through Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy's collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

977.    A justifiable controversy exists between Allstate and Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy because Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy rejects Allstate's ability to deny such claims.

186

978.    Allstate has no adequate remedy at law.

979.    Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy.

980.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy.

**COUNT XXXVII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against S&N NYC Inc d/b/a Colden Pharmacy)**

981.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

982.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

983.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial

means or otherwise, to furnish prescriptions for medically unnecessary drugs, S&N NYC Inc d/b/a Colden Pharmacy was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

984. S&N NYC Inc d/b/a Colden Pharmacy continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

985. S&N NYC Inc d/b/a Colden Pharmacy continues to challenge Allstate's prior claim denials.

986. S&N NYC Inc d/b/a Colden Pharmacy continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits. The scheme is being monetized through S&N NYC Inc d/b/a Colden Pharmacy's collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

987. A justifiable controversy exists between Allstate and S&N NYC Inc d/b/a Colden Pharmacy because S&N NYC Inc d/b/a Colden Pharmacy rejects Allstate's ability to deny such claims.

988. Allstate has no adequate remedy at law.

989. S&N NYC Inc d/b/a Colden Pharmacy also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by S&N NYC Inc d/b/a Colden Pharmacy.

990. Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that S&N NYC Inc d/b/a Colden Pharmacy has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-

Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, S&N NYC Inc d/b/a Colden Pharmacy.

**COUNT XXXVIII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against ASG Rx Corp)**

991.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 585 as if set forth fully herein.

992.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

993.    In view of its (a) billing Allstate for drugs that were not medically necessary and were completely unjustified as a means of treating the Allstate claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Allstate for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs, ASG Rx Corp was, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

994.    ASG Rx Corp continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

995.    ASG Rx Corp continues to challenge Allstate's prior claim denials.

996.    ASG Rx Corp continues to commence legal actions against Allstate in the form of arbitrations and civil court lawsuits.  The scheme is being monetized through ASG Rx Corp's collection actions because they enable the Defendants to fraudulently obtain No-Fault payments, which are used to finance the RICO scheme.

997.    A justifiable controversy exists between Allstate and ASG Rx Corp because ASG Rx Corp rejects Allstate's ability to deny such claims.

998.    Allstate has no adequate remedy at law.

999.    ASG Rx Corp also will continue to bill Allstate for No-Fault payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by ASG Rx Corp.

1000.    Accordingly, Allstate requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring (a) that ASG Rx Corp has no standing to seek, collect, or retain any payments made by Allstate in connection with assigned No-Fault benefits, and (b) that Allstate has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Allstate by, or on behalf of, ASG Rx Corp.

## XI.    **DEMAND FOR RELIEF**

WHEREFORE, plaintiffs, Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Fire & Casualty Insurance Company, (collectively, "Allstate"), respectfully pray that judgment enter in their favor, as follows:

## COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### CYPRESS RX INC. ENTERPRISE
**(Against Avi Abraham Kimyagarov, John Denegall, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Count I Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.


## COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### CYPRESS RX INC. ENTERPRISE
**(Against Avi Abraham Kimyagarov, John Denegall, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Count II Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### BRIAR DRUG STORE INC D/B/A BRIARWOOD RX ENTERPRISE
### (Against Anna Abramova, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Count III Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### BRIAR DRUG STORE INC D/B/A BRIARWOOD RX ENTERPRISE
### (Against Anna Abramova, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Count IV Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### BETTER SOON RX INC. ENTERPRISE
### (Against Deni Yakubov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Count V Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT VI**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**BETTER SOON RX INC. ENTERPRISE**
**(Against Deni Yakubov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT VII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**STORY AVE PHARMACY INC D/B/A 99 CENTS & UP ENTERPRISE**
**(Against Albert Malakov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT VIII**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**STORY AVE PHARMACY INC D/B/A 99 CENTS & UP ENTERPRISE**
**(Against Albert Malakov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale**
**Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and

attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.


**COUNT IX**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**f ENTERPRISE**
**(Against Irina Polvanova, Natan Leviyev, KD Wholesale Inc., MBJ Wholesale Inc., and**
**YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and

attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.


**COUNT X**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**GALAXY RX INC ENTERPRISE**
**(Against Irina Polvanova, Natan Leviyev, KD Wholesale Inc., MBJ Wholesale Inc., and**
**YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ESMERALDA PHARMACY INC ENTERPRISE
**(Against Vladimir Verbitsky, Aron Zavulunov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### ESMERALDA PHARMACY INC ENTERPRISE
**(Against Vladimir Verbitsky, Aron Zavulunov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT XIII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**167 RX INC ENTERPRISE**
**(Against Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT XIV**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**167 RX INC ENTERPRISE**
**(Against Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### FAMILY CARE PHARMACY OF LI INC
### D/B/A FAMILY CARE PHARMACY ENTERPRISE
**(Against Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XVI
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### FAMILY CARE PHARMACY OF LI INC
### D/B/A FAMILY CARE PHARMACY ENTERPRISE
**(Against Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XVII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### S&N NYC INC d/b/a COLDEN PHARMACY ENTERPRISE
**(Against Shamir Dzhurayev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XVIII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### S&N NYC INC d/b/a COLDEN PHARMACY ENTERPRISE
**(Against Shamir Dzhurayev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XIX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ASG RX Corp ENTERPRISE
**(Against Lazar Natanov, Arthur Gukasyan, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT XX**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**ASG RX Corp ENTERPRISE**
**(Against Shamir Dzhurayev, KD Wholesale Inc., MBJ Wholesale Inc., and YBJ Wholesale Inc., Shlomo Mashiyev, Brian Mirzakandov, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT XXI**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**KD WHOLESALE INC. ENTERPRISE**
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Shlomo Mashiyev)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

### COUNT XXII
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**KD WHOLESALE INC. ENTERPRISE**
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Shlomo Mashiyev)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and

attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

### COUNT XXIII
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**MBJ WHOLESALE INC. ENTERPRISE**
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Brian Mirzakandov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XXIV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### MBJ WHOLESALE INC. ENTERPRISE
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Brian Mirzakandov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XXV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### YBJ WHOLESALE INC. ENTERPRISE
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XXVI
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### YBJ WHOLESALE INC. ENTERPRISE
**(Against Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, ASG Rx Corp, Avi Abraham Kimyagarov, John Denegall, Anna Abramova, Deni Yakubov, Vladimir Verbitsky, Aron Zavulunov, Ruben Shalomov, Mikhail Borukhov a/k/a Michael Borukhov, Efray Shamalov, Irina Polvanova, Natan Leviyev, Albert Malakov, Shamir Dzhurayev, Lazar Natanov, Arthur Gukasyan, and Benjamin Yakubov)**

(a) AWARD Allstate's actual and consequential damages to be established at trial; and

(b) AWARD Allstate's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees; and

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XXVII
### COMMON LAW FRAUD
**(Against All Defendants)**

(a) AWARD Allstate's actual damages in an amount to be determined at trial; and

(b) AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the Defendants' illegal conduct; and

(c) AWARD Allstate its costs in defending No-Fault collection suits filed by Cypress Rx Inc., Briar Drug Store Inc d/b/a Briarwood Rx, Better Soon Rx Inc., Story Ave Pharmacy Inc d/b/a 99 Cents & Up, Galaxy Rx Inc, Esmeralda Pharmacy Inc, 167 Rx Inc, Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, S&N NYC Inc d/b/a Colden Pharmacy, and ASG Rx Corp seeking payment of false and fraudulent invoices; and

(d) GRANT any other relief this Court deems just.

**COUNT XXVIII**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

(a) AWARD Allstate's actual and consequential damages to be determined at trial; and

(b) GRANT any other relief this Court deems just.

**COUNT XXIX**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Cypress Rx Inc.)**

(a) DECLARE that Cypress Rx Inc., at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering Cypress Rx Inc. completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that Cypress Rx Inc.'s activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Cypress Rx Inc.; and

(d) GRANT all other relief this Court deems just and appropriate.

**COUNT XXX**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Briar Drug Store Inc d/b/a Briarwood Rx)**

(a) DECLARE that Briar Drug Store Inc d/b/a Briarwood Rx, at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to

pharmacies, thus rendering Briar Drug Store Inc d/b/a Briarwood Rx completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that Briar Drug Store Inc d/b/a Briarwood Rx's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Briar Drug Store Inc d/b/a Briarwood Rx; and

(d) GRANT all other relief this Court deems just and appropriate.

## COUNT XXXI
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Better Soon Rx Inc.)

(a) DECLARE that Better Soon Rx Inc., at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering Better Soon Rx Inc completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that Better Soon Rx Inc's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Better Soon Rx Inc; and

(d) GRANT all other relief this Court deems just and appropriate.

## COUNT XXXII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Story Ave Pharmacy Inc d/b/a 99 Cents & Up)

(a) DECLARE that Story Ave Pharmacy Inc d/b/a 99 Cents & Up, at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering Story Ave Pharmacy Inc d/b/a 99 Cents & Up completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that Story Ave Pharmacy Inc d/b/a 99 Cents & Up's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Story Ave Pharmacy Inc d/b/a 99 Cents & Up; and

(d) GRANT all other relief this Court deems just and appropriate.

## COUNT XXXIII
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Galaxy Rx Inc)

(a) DECLARE that Galaxy Rx Inc, at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering Galaxy Rx Inc completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that Galaxy Rx Inc's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Galaxy Rx Inc; and

(d) GRANT all other relief this Court deems just and appropriate.

## COUNT XXXIV
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Esmeralda Pharmacy Inc)

(a) DECLARE that Esmeralda Pharmacy Inc, at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering Esmeralda Pharmacy Inc completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that Esmeralda Pharmacy Inc's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Esmeralda Pharmacy Inc; and

(d) GRANT all other relief this Court deems just and appropriate.

## COUNT XXXV
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against 167 Rx Inc)

(a) DECLARE that 167 Rx Inc, at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering 167 Rx Inc completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that 167 Rx Inc's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by 167 Rx Inc; and

(d) GRANT all other relief this Court deems just and appropriate.

## COUNT XXXVI
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy)

(a) DECLARE that Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy, at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Family Care Pharmacy of LI Inc d/b/a Family Care Pharmacy; and

(d) GRANT all other relief this Court deems just and appropriate.

## COUNT XXXVII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against S&N NYC Inc d/b/a Colden Pharmacy)

(a) DECLARE that S&N NYC Inc d/b/a Colden Pharmacy, at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering S&N NYC Inc d/b/a Colden Pharmacy completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that S&N NYC Inc d/b/a Colden Pharmacy's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by S&N NYC Inc d/b/a Colden Pharmacy; and

(d) GRANT all other relief this Court deems just and appropriate.

## COUNT XXXVIII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against ASG Rx Corp)

(a) DECLARE that ASG Rx Corp, at all relevant times, was caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering ASG Rx Corp completely ineligible to seek or receive reimbursement under New York's No-Fault laws; and

(b) DECLARE that ASG Rx Corp's activities are unlawful; and

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by ASG Rx Corp; and

(d) GRANT all other relief this Court deems just and appropriate.

XIV.  **JURY TRIAL DEMAND**

The plaintiffs demand a trial by jury on all claims.

KING, TILDEN, MCETTRICK & BRINK, P.C.,

*/s/ Michael W. Whitcher*

_____
Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Michael W. Whitcher (MW 7455)
mwhitcher@ktmpc.com
100 Ring Road, Suite 211
Garden City, NY 11530
Ph:  347-710-0050
Fax: 347-710-0055

Attorneys for the Plaintiffs,
*Allstate Insurance Company,*
*Allstate Property & Casualty Insurance Company,*
*Allstate Indemnity Company, and*
*Allstate Fire & Casualty Insurance Company*

Dated:  August 13, 2025